Jarred NEWSOME, an infant, By and Through his Next Friends, Anthony NEWSOME, Jr., and Theresa Newsome, Petitioner,

v.

Hon. Charles E. LOWE, Jr., Judge, Pike Circuit Court, Division No. II, Respondent.

Court of Appeals of Kentucky.

July 5, 1985.

Joe C. Savage, Savage, Garmer & Elliott, P.S.C., Lexington, for petitioners.

William J. Baird III, Baird & Baird, Jack T. Page, Charles E. Lowe, Jr., Pikeville, for Harry Altman.

Before COMBS, McDONALD and WILHOIT, JJ.

McDONALD, Judge:

This opinion is in response to a writ of prohibition sought by the plaintiffs in a medical malpractice action. The plaintiffs, petitioners in this court, are seeking to narrow the discovery methodology available to the respondent whom they have charged with negligence in handling the birth of Jarred Newsome. Prior to filing suit, and in anticipation of litigation, counsel for petitioner retained the services of Dr. Bernard Nathanson, a board-certified obstetrician and expert medical doctor, for the purpose of obtaining a professional evaluation *consultation* based upon the medical records related to petitioner's birth. The physician's report was tendered by letter on December 28, 1982, as a means of informing counsel of the merits of petitioner's claim. It was not until January 19, 1983, that suit was filed against the attending physician, Dr. Harry Altman.

Alleging negligence by action and by omission, the factual basis underlying petitioner's claim discloses an elderly multipara whose medical history reflected obesity, personal and familial diabetes, and previous delivery of an excessively sized infant. Under the care of Dr. Altman throughout her pregnancy, petitioner's mother was admitted to Methodist Hospital on February 12, 1979, at 4:40 p.m. experiencing contractions every twenty to thirty minutes. The birth process was lengthy and tedious. After an 18-hour labor period petitioner's mother was delivered of an 11-pound, 5-ounce male infant under general anesthesia. The infant suffered a significant shoulder dystocia and a left Erb's palsy. It is petitioner's contention that the mother's medical history and present condition were indicative of delivery of an oversized infant with shoulder dystocia and the necessity of performing a Caesarean section rather than attempting a vaginal delivery. Petitioner's claim of negligence is predicated upon Dr. Altman's alleged departure and deviation from customarily expected medical standards in consideration of the mother's medical history.

Discovery was initiated on February 23, 1983, when counsel for Dr. Altman served interrogatories upon petitioner seeking responses to basic questions permitted under CR 26.02(4)(a)(ii) and inclusive of (1) identification of each expert witness, (2) the subject matter, (3) the substance of facts and opinions, and (4) summary of the grounds for each opinion. Response was tendered on March 18, 1983, indicating petitioner had made no determination as to which experts would be called to testify. A choice subsequently was made; petitioner named Dr. Nathanson and fully answered the interrogatories. Petitioner's counsel then consented to the discovery deposition of Dr. Nathanson without a court order pursuant to CR 26.02(4)(a)(ii). The cooperative efforts of counsel resulted in the taking of Dr. Nathanson's discovery and videotaped evidentiary deposition on consecutive days. During the discovery deposition defendant's counsel learned of and requested production of the December 28, 1982 letter of consultative evaluation. Petitioner's counsel refused the request. In response, counsel for Dr. Altman complained to the trial court that he had been unable to ascertain the specific acts of negligence upon which petitioner's claim was based and sought an order compelling production of the disputed letter of consultative evaluation.

Petitioner seeks a Writ of Prohibition alleging the letter to be work product protected from discovery by CR 26.02. In response, defendant Dr. Altman contends the letter does not fall within the orbit of work product and that CR 26.02(3) permits discovery upon a showing of substantial need. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), is the landmark case outlining the basic boundaries of attorney work product as that concept is applied to the rules of discovery. Some of the language, and all of the spirit, of *Hickman v. Taylor*, was codified in the federal civil rules amendments to *Federal Rules of Civil Procedure* 26(b). The Kentucky civil rules closely follow the federal rules and actually are cut from the federal cloth, as Fed.R.Civ.P. 26(b) is reflected in our rule

CR 26.02, which reads as follows in pertinent parts:

### Rule 26.02 *Scope of Discovery*

(1) *In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

.   .   .   .   .

(3) *Trial Preparation: Materials.*

(a) Subject to the provisions of paragraph (4) of this Rule, a party may obtain discovery of documents and tangible things otherwise discoverable under paragraph (1) of this Rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

(b) A party may obtain without the required showing * a statement concerning the action or its subject matter previously made by that party. Upon request, a person not a party may obtain without the required showing * a statement concerning the action or its subject matter previously made by that person. If the request is refused the person may move for a court order. The provisions of Rule 37.01(4) apply to the award of expenses incurred in relation to the motion. For purposes of this subparagraph (b), a statement previously made is (i) a written statement signed or otherwise adopted or approved by the person making it, or (ii) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

(4) *Trial Preparation: Experts.* Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of paragraph (1) of this Rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(a)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to paragraph (4)(C) of this Rule, concerning fees and expenses as the court may deem appropriate.

(b) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35.02 or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain

facts or opinions on the same subject by other means.

Within the framework of CR 26.02 we will consider the facts at hand. First, we examine CR 26.02(1). It says, "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Here, there are two basic limitations within the rule. Since the rule covers "any matter," those restrictions are (1) matters not privileged and (2) relevancy.

■ We will talk about relevancy first. The relevancy requirement is answered within the rule itself by covering conditions upon which an objection may be asserted. The relevancy requirement is related to "the subject matter involved" in the litigation and is not confined to evidence. Further, the rule seeks out for disclosure purposes persons "having knowledge of any discoverable matter." Again, the concept of evidence is not used and is conspicuous by its absence. The only time concept of evidence is used is when an objection to information is asserted. Then the rule explicitly provides: "It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Because the relevancy requirement is so broad we can hardly think of any inquiry that would be excluded. It covers "any matter" of information relating to the "subject matter" of the litigation, as to the claim or defense of any party. An objection to the information sought, as the rule points out, may not be based on the inadmissibility of the information at trial so long as it appears that the information sought is reasonably calculated to lead to discovery of admissible evidence.

For a full discussion of the impact of this provision in CR 26, we cite Wright & Miller, *Federal Practice and Procedure: Civil* § 2008. In this regard, balancing the interests of attorney work product against the principle of full discovery, along with the liberal spirit of interpretation of relevancy, we unquestionably lean toward the disclosure of Dr. Nathanson's consultative letter.

Now we must turn our attention toward the question of privilege. CR 26.02(1) points out that any matter is discoverable which is not privileged, and that part of the rule must be read with CR 26.02(3). The prelitigation consultative evaluation letter of Dr. Nathanson to counsel for the petitioner is without question a document or tangible thing "otherwise" discoverable under CR 26.02(1). It so qualifies in all respects. Only the invocation of a privilege can disqualify it, thereby making it undiscoverable. Here, Dr. Nathanson, the prelitigation consultant, by chameleonic process, became Dr. Nathanson, the trial expert. His status as trial expert is now clearly controlled by CR 26.02(4). This part of the rule outlines the means by which facts and opinions of the trial expert are discoverable. The rule does not increase the scope of discovery, only its methodology.

■ The petitioner and Dr. Nathanson have complied with the rule as it relates to Dr. Nathanson's status as an expert. Respondent's allegation that Dr. Nathanson failed to provide a full foundation of his opinions and conclusions is without merit. Scrutiny of the deposition of Dr. Nathanson reveals that the substance of facts and opinions given indicated that Dr. Altman should have examined Theresa Newsome within a 14½-hour time span and should not have given her a general anesthesic. Although the precise terminology was not set forth, the "substantial equivalent" and "summary of the grounds" mandated by CR 26.02(3)(a) is clearly evident. The intent of the rule, to enable counsel to adequately prepare for cross-examination, has been satisfied. Therefore, respondent's first complaint to the trial court was adequately answered.

■ The respondent now wants to discover information concerning Dr. Nathanson as the prelitigation consultant. We say that that aspect of Dr. Nathanson is not discoverable. We come to this conclusion

for two reasons: First, we believe that when a consultant is hired for the purpose, as was Dr. Nathanson, of evaluating claims and rendering consultative evaluation reports, his consultation reports are certainly within the orbit of privileged matters. Prelitigation consultative evaluations are encouraged; if there is no confidentiality with them, the procedure will not be utilized. One need only read the cases of *Raine v. Drasin,* Ky., 621 S.W.2d 895 (1981), and *Daugherty v. Runner,* Ky. App., 581 S.W.2d 12 (1978), to sense the advisability of obtaining prelitigation evaluations, particularly in professional negligence cases.

■ Simply because Dr. Nathanson became the expert for trial purposes did not alone destroy his protective shield as an evaluation consultant with a privileged status.

■ Secondly, respondent made no showing of substantial need under CR 26.-02(3)(a). This requirement applies where there was no privilege invoked. Counsel for respondent quite candidly admitted at the oral argument on this petition that obtaining Dr. Nathanson's letter would possibly enable him to impeach Dr. Nathanson at trial. While this would qualify as a legitimate and worthy aim, we do not believe that it is a showing of a substantial need under the rule. *See Federal Practice and Procedure: Civil* § 2025 n. 91. The intent and spirit of the rule is to afford the greatest latitude possible in discovery. However, the discovery cannot encroach upon the attorney's work product or the attorney's or other representative's (here consultant's) mental impressions, conclusions, opinions or legal theories concerning the litigation.

The purpose for restricting the discovery of the prelitigation consultative letter is to protect the confidentiality of such matters and to encourage the use of such consultations. Baseless and frivolous claims should not be pursued, and whether they are such in complex and technical cases, principally in professional negligence cases, requires free and open exchange of information with the consultant.

■ Therefore, under these circumstances, we consider that a prelitigation consultant would have a qualified privileged status the same as trial counsel's partners, associates, paralegals and secretaries. Dr. Nathanson is given a qualified immunity because, if full discovery was permitted, the rule becomes frustrated or "documents and tangible things" would not be produced or recorded. Thus, in the absence of any showing of manipulation of these rules, we conclude that the consultative letter of Dr. Nathanson is not discoverable, and the trial court abused its discretion in so ordering.

It is ORDERED that the petition be GRANTED.

COMBS, J., concurs.

WILHOIT, J., concurs by separate opinion.

WILHOIT, Judge, concurring:

I concur in the result reached by the majority because it appears that the defendant's request to obtain the letter of evaluation was based on mere conjecture that the letter might contain material which could be used to impeach Dr. Nathanson. *See Hauger v. Chicago Rock Island & Pacific Railroad Co.,* 216 F.2d 501 (7th Cir.1954).