**WAL–MART STORES, INC., Appellant,**

v.

**Benjamin L. DICKINSON,
Judge, Barren Circuit
Court, Appellee,**

and

**Deloris Laurenz, Real
Party in Interest.**

**No. 1999–SC–0758–MR.**

Supreme Court of Kentucky.

Sept. 28, 2000.

Richard H.C. Clay, Christopher R. Cashen, Woodward, Hobson & Fulton, L.L.P., Lexington, for Appellant.

Benjamin L. Dickinson, Judge, Barren Circuit Court, Glasgow, for Appellee.

Temple Dickinson, Gillenwater, Hampton & Dickinson, Glasgow, for Real Party in Interest.

JOHNSTONE, Justice.

Wal–Mart, Stores, Inc., appeals to this Court as a matter of right from a Court of Appeals' order denying its petitions for writs of prohibition. We affirm in part and reverse in part.

Deloris Laurenz was the victim of a purse snatching in the parking lot of the Glasgow, Kentucky, Wal–Mart. She suffered injuries as a result of this crime. Subsequently, Laurenz sued Wal–Mart alleging that it had assumed the responsibility for the safety of persons using the parking lot, thereby creating a duty which it breached when it failed to prevent the purse snatching in question or adequately warn her of the potential danger.

In the course of discovery, Laurenz propounded numerous discovery requests including a request for production of documents. The document production request was concerned primarily with the amount and type of information available to Wal–Mart at or before the purse snatching concerning crime rates, crime prevention, types and patterns of parking-lot crimes, as well as general security information such as manuals, treatises, etc.

On the eve of trial in February 1998, Laurenz's expert arrived from out of town and brought with him a copy of an industry magazine for the retail security industry. The magazine contained an article by David Gorman who was Wal–Mart's vice president for loss prevention at the time. In the article, Gorman described the development and features of Wal–Mart's parking lot security patrol. The article also made reference to "a survey that looked at crime statistics for a one-year period on Wal–Mart properties." According to the survey, 80 percent of crimes at Wal–Mart occurred outside of the stores, primarily in the parking lots.

Laurenz presented the article to the trial court on the day of trial and moved for a continuance. The trial court granted the motion. In the words of the trial court:

[T]his action was continued in February 1998 because WAL–MART, INC. had not furnished information in it's (sic) possession (written by its own employee) properly requested during discovery. WAL–MART, INC., through counsel, apologized to the Court profusely and made sweeping offers to make everything right so we could get on with the case. The offer included flying plaintiff's attorney to Bentonville, Ark. to take a number of depositions of WAL–MART, INC. loss prevention employees. *Laurenz v. Wal–Mart, Inc.,* 96–CI–00115 at 2 (Barren Circuit Court Order entered on May 7, 1999).

In spite of its sweeping offer, Wal–Mart continued to delay discovery and was non-responsive to Laurenz's repeated requests for the promised information. Five months after the original trial date, Laurenz sent Wal–Mart a formal document request entitled: Supplemental Interrogatories, Request for Production of Documents and Request for Admissions Propounded to Defendant Wal–Mart. Two and a half months later, Wal–Mart responded with numerous objections and indicated that many of the requested documents did not exist. This response was signed by one T.J. Vestal. Wal–Mart now maintains that Vestal is a paralegal who works under the direction and supervision of Wal–Mart's in-house counsel and in close association with outside counsel, though she is not identified as such in the response.

Subsequently, Laurenz filed a motion to compel. A hearing was held on the motion on November 23, 1998, at which Wal–Mart continued to deny the existence of many of the requested items. At the hearing, the possibility of deposing Ms. Vestal was first raised. Her status as a paralegal was not made known at that time. A new trial date was set for March 4, 1999.

Following this hearing, Laurenz's counsel made repeated efforts to set a date and time for the depositions of Wal–Mart's loss prevention employees pursuant to the promises made by Wal–Mart's counsel. On February 9, 1999, Laurenz's counsel was informed that the depositions could be taken in Bentonville, Arkansas, on February 12, 1999, but Gorman and Vestal would not be available at that time. After failing to establish another date in which Gorman would be available, Laurenz's counsel went to Bentonville on February 12, where he took three other depositions.

At these depositions, Wal–Mart's counsel inadvertently revealed that he had spoken to both Gorman and Vestal earlier that day at Wal–Mart's main office in Bentonville. However, even though this was contrary to his earlier representation that neither Gorman nor Vestal would be in Bentonville on February 12, Wal–Mart's counsel declined to make them available for deposition on the grounds that they had already left Bentonville. Also, it was learned at the depositions that several security training videotapes that Laurenz had sought pursuant to discovery requests did in fact exist. Wal–Mart had repeatedly denied the existence of the tapes.

Laurenz made a motion to compel and/or to continue the trial. The motion for a continuance was based in part on the fact that Wal–Mart finally had provided dates for Gorman's deposition, all of which were after the scheduled trial date. Wal–Mart did not fare well at the hearing and was ordered to conclude discovery before trial. Wal–Mart's counsel, then John David Cole, Jr., stated that he had arranged for a private plane, leaving at 7:00 a.m. the next morning, to fly both himself and Laurenz's counsel to Bentonville to take the depositions of Gorman and Vestal and to allow a "walk through" of Wal–Mart's loss prevention center. The trial court ordered this be done and denied the motion for a continuance.

Later that evening, Laurenz's counsel received a message from Cole stating that Cole no longer represented Wal–Mart and that the flight to Bentonville was canceled.

Woodward, Hobson & Fulton, in the persons of Christopher R. Cashen and Richard H.C. Clay, entered on Wal–Mart's behalf and the case was continued again. Cashen and Clay moved for a protective order concerning Vestal's deposition and the walk through. The trial court denied the motion. Wal–Mart then petitioned the Court of Appeals for a writ of prohibition to prohibit the trial court from enforcing its order allowing the walk through and the deposition of Vestal. The Court of Appeals summarily denied the petition and Wal–Mart appeals that decision to this Court as a matter of right. We affirm in part and reverse in part.

## STANDARD OF REVIEW

A writ of prohibition is an extraordinary remedy, and we have always been cautious in granting such relief. *Bender v. Eaton*, Ky., 343 S.W.2d 799, 800 (1961). In order for a writ of prohibition to be appropriate in cases where jurisdiction is not challenged, a petitioner must show that: (1) he would have no adequate remedy on appeal; and (2) he would suffer great and irreparable injury if the trial court is acting in error and the writ is denied. *Id.* at 801.

As a practical matter, whenever a discovery violation occurs that allegedly allows discovery in error, a party will not have an adequate remedy by appeal because "once the information is furnished it cannot be recalled." *Id.* The information may or may not be used at trial and, generally, the admissibility of the information is not affected by the discovery violation. *See, e.g., Transit Authority of River City v. Vinson*, Ky.App., 703 S.W.2d 482, 486 (1985) ("[W]ork product immunity protects only the documents themselves and not the underlying facts.") Thus, when information that is obtained from a party in violation of the discovery rules is admitted as evidence at trial, this fact alone does

not provide grounds for objecting to the introduction of the evidence and, hence, an aggrieved party has no means of preserving the issue for appeal.[1]

The trial court order concerning both the walk through and the deposition of Vestal involves allegations of a violation of the discovery rules, which allegations concern the disclosure of information in error as opposed to the denial of discovery in error. *Compare Bender, supra,* (petitioners had no adequate remedy on appeal for an erroneous trial court order allowing discovery of information obtained in violation of the civil rules) *with Roberts v. Knuckles*, Ky., 429 S.W.2d 29 (1968) (petitioners had adequate remedy by way of appeal for alleged trial court error denying discovery of certain information). In regard to both the walk through and Vestal's deposition, we believe that Wal–Mart would not have an adequate remedy on appeal if the court order is in error. Now we turn to the issue of irreparable harm.

As to Vestal's deposition, Wal–Mart argues that "Laurenz's attempt to depose her is no different than an attempt by Laurenz to depose opposing counsel." Assuming that Wal–Mart is correct, it has made an initial showing of irreparable harm as to her deposition. *See McMurry v. Eckert*, Ky., 833 S.W.2d 828, 830–831 (1992). However, the issue of irreparable harm is not so clear as to the walk through.

Wal–Mart makes no specific claims as to irreparable harm arising from the walk through. Rather it argues that the trial court erred in denying the protective order because its "headquarters are not open to the public and contain extremely sensitive, proprietary, confidential information and trade secrets." The disclosure of a trade secret, such as the formula for Coca–Cola, clearly justifies the entry of a protective order. *See* CR 26.03(1)(g).

---

1. This, of course, does not preclude the party from objecting to the introduction of the evidence on some other independent ground, *e.g.*, that the evidence is privileged information under the Kentucky Rules of Evidence.

Most likely, disclosure of a trade secret would likewise rise to the level of irreparable harm as the potential harm could extend far beyond the case in which the disclosure is made. However in this case, Wal–Mart's general claims are not well taken and cannot serve to establish irreparable harm. Nonetheless, we can reach the merits of the issue.

■■■ As noted above, generally an aggrieved party does not have an adequate remedy on appeal for an alleged discovery violation involving the erroneous disclosure of information. Often the remedy is not only inadequate, it is totally unavailable because the aggrieved party has no basis for making an objection at trial to preserve the issue for review. Consequently, a number of issues involving the interpretation of the discovery rules seldom, if ever, are presented on direct appeal. In order to address these issues, this Court has carved out an exception to the general rule concerning the requirements for showing that a writ of prohibition or mandamus is an appropriate remedy.

> [I]n certain special cases this Court will entertain a petition for prohibition in the absence of a showing of specific great and irreparable injury to the petitioner, provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, and correction of the error is necessary and appropriate in the interest of orderly judicial administration. It may be observed that in such a situation the court is recognizing that if it fails to act the administration of justice generally will suffer the great and irreparable injury.

Bender, 343 S.W.2d at 801; accord National Gypsum Company v. Corns, Ky., 736 S.W.2d 325, 326 (1987) ("The requirement of 'great and irreparable injury' [is] treated with a degree of flexibility permitting intervention if the administration of justice, [rather than the petitioner], would suffer great and irreparable injury.")

The Bender Court went on to state that proper construction and application of the civil rule at issue in the case was important to the orderly administration of the Civil Rules. Id. at 802. From there, the Bender Court determined that the issue raised in the case before it was significant enough to justify reaching the merits in an original proceeding. Id. Likewise, we believe that the issue raised in this case concerning the proper application of CR 34.01 is sufficiently important that we may address the merits under the exception established in Bender, supra.

## THE WALK THROUGH

The order granting Laurenz's motion for a walk through of Wal–Mart's loss prevention center in Bentonville, Arkansas, merely states: "[T]he plaintiff's Motion for Entrance Upon Premises is SUSTAINED (sic)." Further, the order does not indicate the source of the trial court's authority to order the walk through. There is no common-law power that allows a court of law to order discovery or inspection of premises. A.J. Cannizzaro, Annotation, Discovery—Articles and · Premises, 4 A.L.R.3d 762 (1965). Further, any equitable power the trial court may have had to order the walk through has been subsumed by the adoption of any Civil Rule encompassing the right of discovery or inspection of a premises. Cf. Proctor & Gamble Distributing Company v. Vasseur, Ky., 275 S.W.2d 941, 943 (1955). The right of inspection of premises is set forth in CR 34.01, which provides in pertinent part:

> Any party may serve upon any other party a request to ... permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing or sampling the property or any designated object or operation thereon, within the scope of Rule 26.02.

As there is no case law in Kentucky concerning application of CR 34.01 to in-

spection of premises, we will begin our discussion by making a few general comments about the rule. First, like most discovery devices provided for in the civil rules, a party may make request to permit entry under CR 34.01 without leave of the court. Next, if a party objects to the request, the decision whether to allow the entry is left to the discretion of the trial court and the issue should be presented to the trial court via a motion to compel discovery. *See* CR 34.02(2). Finally, the motion to compel discovery and any resulting trial court order should specify the relation of the premises to be inspected to the asserted cause of action. It is here where the trial court's order fails.

■ In interpreting identical language contained in Fed.R.Civ.P. 34, courts have allowed entry onto a premises:

> so that a party may inspect a machine involved in a personal injury case, inspect or photograph a factory where the plaintiff contracted an occupational disease, inspect the area around a station platform where an accident occurred, examine cattle and pasture lands where it is alleged that the cattle are being damaged by pollutants emanating from the defendant's plant, inspect a cesspool and place a dye in it to determine if it is polluting the plaintiff's water supply, inspect the site of a fire, inspect a building in a construction contract dispute, inspect and photograph a ship, determine if there was an underground trespass when an oil and gas well was drilled, or place experts within the facilities of a state youth council for the purpose of determining the quality of life in those institutions.

23 Am.Jur.2d, Depositions and Discovery § 269 (1983) (internal citations omitted). While the above list is illustrative and not meant to be exhaustive, the cases all share one thing in common. In each case, the place to be inspected is somehow "at issue" in the underlying law suit. Consequently, we hold that there must be some sort of nexus between the premises to be inspected and the underlying cause of action before a trial court may order an inspection of premises pursuant to CR 34.01 and that this nexus must appear on the face of the order.

Turning to the case at bar, the trial court—reacting to Wal–Mart's apparent lack of respect for Kentucky courts in general and the Barren Circuit Court in particular—ordered Wal–Mart to allow Laurenz to walk through its loss prevention center at its Bentonville, Arkansas headquarters. Wal–Mart's headquarters are far removed from the Glasgow, Kentucky Wal–Mart where the purse snatching occurred. Thus, there is no physical nexus between the ordered inspection and the incident (the purse snatching) giving rise to the underlying cause of action.

■ The argument is made that the order is related to a necessary element of Laurenz's underlying negligence claim, *i.e.*, whether the purse snatching was foreseeable. The basis of this argument is that the question of whether Wal–Mart's loss prevention center maintains a library and what that library contains is relevant to the issue of what Wal–Mart knew—at the time that Laurenz was injured in the purse snatching incident—concerning the potential for crimes and the type of crimes committed at its individual stores. This argument is not without merit, especially in light of Wal–Mart's cavalier attitude toward the trial court's discovery orders. However, the trial court's order is not limited to an inspection for this purpose. Rather, the order is very broad and does not specify how the walk through of the loss prevention center is related to Laurenz's cause of action. While we appreciate the trial court's frustration at Wal–Mart's dilatory conduct, we hold that the trial court abused its discretion in granting the walk through because the order itself does not set forth the nexus between the walk through and the underlying cause of action. Any order of inspection pursuant to CR 34.01 must specify this connection in

order to delineate the scope of the inspection and to prevent the inspection from turning into an overly intrusive fishing expedition.

## VESTAL'S DEPOSITION

■ Wal–Mart maintains Vestal is a paralegal who works under the direction and supervision of Wal–Mart's in-house counsel and in close association with outside counsel. We assume for the sake of this argument that the assertion is true. Wal–Mart then argues that "Laurenz's attempt to depose her is no different than an attempt by Laurenz to depose opposing counsel," and thus the writ should issue under the authority of *McMurry v. Eckert,* Ky., 833 S.W.2d 828 (1992). Under *McMurry,*

> opposing counsel may only be deposed after the party seeking discovery has shown that "(1) No other means exist to obtain the information than to depose opposing counsel (citation omitted); (2) the information sought is relevant and not privileged; and (3) the information is crucial to the preparation of the case."

*Id.* at 830 quoting *Shelton v. American Motors,* 805 F.2d 1323 (8th Cir.1986). Assuming that *McMurry* applies with equal force to a paralegal working with or for opposing counsel, there has been no showing of need under *McMurry* to justify the taking of Vestal's deposition and, thus, under *McMurry,* Laurenz should be prohibited from deposing her. However, under the facts of the case at bar, *McMurry* has no application even if the case is construed to apply to paralegals working for or with opposing counsel.

In denying the protective order as to Vestal's deposition, the trial court stated in pertinent part:

> The obvious questions (sic) to be asked is why was the article written by WAL–MART, INC.'s head of loss prevention directly related to the issues raised in this lawsuit not furnished as requested? Have any other relevant documents been "found" since then and what procedure was used to "discover" relevant documents requested?
>
> The Court would like to know the answers to these questions also and determine if good faith was used and whether the trial was delayed unnecessarily. WAL–MART, INC. is a party and must designate someone knowledgeable to respond to discovery requests truthfully and honestly. It cannot hire lawyers and paralegals as corporate employees to respond to discovery and then[,] when the discovery is challenged[,] hide behind attorney/client or work product privileges.

*Laurenz v. Wal–Mart, Inc.,* 96–CI–00115 at 2–3 (Barren Circuit Court Order entered on May 7, 1999). We agree with the trial court.

The limited purpose of Vestal's deposition is to determine what search was performed for the documents in question and how the search was carried out. This is a rare situation in which these questions became relevant as a result of Wal–Mart's grudging and demonstratively incomplete responses to Laurenz's legitimate discovery requests. In signing Wal–Mart's response to Laurenz's request for production of documents, Vestal held herself out as the person who conducted the search and as the only person able to provide the answers to the questions posed in the trial court's order.

CR 34 controls the substance and procedure for requests for production of documents. CR 34.01(a) provides in pertinent part:

> Any party may serve on any other party a request to produce and permit the party making the request … to inspect and copy any designated documents ….

This request places a duty on a party to respond to a request for production of documents. This duty is stated in CR 34.02(2), which provides in pertinent part:

The party upon whom the request is served shall serve a written response .... The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for objection shall be stated....

Inherent in the duty created by CR 34.02 is the duty to search for and ascertain whether the requested documents exist and, if they do, where they are located. This duty is tempered by: (1) the fact that the documents requested must be relevant to the subject matter involved in the pending action;[2] (2) the documents requested must be described with "reasonable particularity" before the duty is triggered;[3] and (3) a party can seek a protective order when it believes the request creates annoyance, embarrassment, oppression, undue burden or undue expense.[4] In order for the trial court and the party propounding the request to be able to determine whether the responding party has adequately performed his or her duty, someone must be held accountable. Who else to hold accountable but the person responding to the request? Therefore, we hold that a person—regardless of whether that person is opposing counsel—signing a response to a request for production, which is made pursuant to CR 34.01, holds him or herself out as having personal knowledge of the answers given and is subject to deposition for the limited purpose of exploring his or her actual knowledge of the answers given including, but not limited to, the methods employed to search for the documents requested and the scope of that search. And, of course, the inquiry into the mechanics of the search must be relevant.

We note this is contrary to the procedure for responding to interrogatories. CR 33.01(1) specifically provides that "if the party served is a public ... corporation" then the interrogatories may be answered by "any officer or agent, who shall furnish such information as is available to the party." Further, interrogatories may be answered by counsel who acts as an agent for the corporation within the meaning of the rule,[5] and counsel need not have personal knowledge of the answers given.[6] Thus, signing a response to interrogatories does not, in-and-of-itself, make the signor subject to being deposed.

Next, we address the issue of whether the attorney-client privilege of KRE 503 applies with equal force to any information sought to be obtained from a paralegal working with or for a party's counsel as it would to information sought to be obtained from the counsel him or herself. Resolution of this issue is necessary because the trial court's order could be misconstrued as allowing Laurenz to seek privileged and protected information at Vestal's deposition. This precise issue has not been decided in this Commonwealth, though dicta in *Newsome By and Through Newsome v. Lowe*, Ky.App., 699 S.W.2d 748, 752 (1985), does support the proposition.

We believe that the privilege should apply with equal force to paralegals, and so hold. A reality of the practice of law today is that attorneys make extensive use of nonattorney personnel, such as paralegals, to assist them in rendering legal services. Obviously, in order for paralegals, investigators, secretaries and the like to effectively assist their attorney employers, they must have access to client confidences. If privileged information pro-

2. CR 34.01(a).

3. CR 34.02(1).

4. CR 26.03(1).

5. *See, e.g., Segarra v. Waterman Steamship Corporation*, 41 F.R.D. 245, 248 (D.P.R.1966).

6. *See, e.g., United States v. 42 Jars*, 264 F.2d 666, 670 (3rd Cir.1959); *see also*, 23 Am. Jur.2d, Depositions and Discovery § 219 (1983).

vided by a client to an attorney lost its privileged status solely on the ground that the attorney's support staff was privy to it, then the free flow of information between attorney and client would dry up, the cost of legal services would rise, and the quality of those same services would fall. *Cf. Williams v. Trans World Airlines, Inc.,* 588 F.Supp. 1037, 1044 (W.D.Mo.1984). Likewise, and for the same reasons, we hold that attorney work product prepared by a paralegal is protected with equal force by CR 26.02(3) as is any trial preparation material prepared by an attorney in anticipation of litigation. *Accord United Coal Companies v. Powell Construction Company,* 839 F.2d 958, 966 (3rd Cir. 1988); *Fine v. Facet Aerospace Products Company,* 133 F.R.D. 439, 444–45 (S.D.N.Y.1990).

For the reasons set forth above, the Court of Appeals' order denying the writ of prohibition as to the walk through is reversed and the Court of Appeals' order denying the writ of prohibition as to the deposition of T.J. Vestal is affirmed. Accordingly, this case is remanded to the Barren Circuit Court with directions to vacate that part of its May 7, 1999 order denying a protective order as to the walk through of Wal–Mart's loss prevention center.

LAMBERT, C.J.; COOPER, GRAVES, and STUMBO, JJ., concur.

WINTERSHEIMER, J., concurs in part and dissents in part by separate opinion, with KELLER, J., joining that opinion.

WINTERSHEIMER, Justice, concurring in part and dissenting in part.

I concur with that part of the majority opinion which states that the Court of Appeals properly acted to deny the writ of prohibition because there was no abuse of discretion. The petitioner had failed to meet its obligation and burden of showing all the prerequisites for the issuance of a writ of prohibition.

In particular reference to the walk through authorized by the circuit court, I would agree that CR 34.01 provides the basis for a court to order discovery or inspection of premises. Certainly, the circuit court should abide by the rule and specify in some detail the right of inspection. However, in this case, Wal–Mart has failed to demonstrate one of the prerequisites for the issuance of a writ of prohibition, irreparable injury, resulting from a walk-through inspection. Wal–Mart could show no great or ruinous loss. Citation to *McMurry v. Eckert,* Ky., 833 S.W.2d 828 (1992), is inappropriate. The standards set out in *McMurry, supra,* to-wit: there was no other means to get the information; the information sought was relevant and nonprivileged and the information was critical to the case, are met in this case.

All that is sought here is to establish the existence and nature of documents in which Wal–Mart will have an adequate remedy on appeal, if any is needed.

Under all the circumstances, and as the majority notes, the cavalier attitude and dilatory tactics of Wal–Mart, I cannot say that the trial judge abused his discretion in granting a walk-through order simply because it does not follow the exact language of CR 34.01 or 34.02(2).

KELLER, J., joins in this opinion.