RENDERED: JUNE 17, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0588-MR

KIMBERLY JOHNSON                                        APPELLANT


|  | ON APPEAL FROM COURT OF APPEALS |  |
|---|---|---|
| V. | NO. 2020-CA-0517 |  |
|  | FLEMING CIRCUIT COURT NO. 16-CI-00139 |  |


HONORABLE STOCKTON B. WOOD, JUDGE           APPELLEE
OF THE FLEMING CIRCUIT COURT

AND

DR. AMANDA APPLEGATE; FAMILY           REAL PARTIES IN INTEREST
MEDICINE ASSOCIATES OF
FLEMINGSBURG, P.S.C.; FAMILY
MEDICINE ASSOCIATES OF
FLEMINGSBURG (ASSUMED NAME
CORPORATION OF FAMILY MEDICINE
ASSOCIATES OF FLEMINGSBURG, P.S.C.);
DR. RICHARD S. HARTMAN; DR.
JENNIFER HAGENSCHNEIDER; DR.
CHARLES CLARKE; MAYSVILLE
RADIOLOGY ASSOCIATES, P.S.C.;
FLEMING COUNTY MEDICAL CENTER, LLC
D/B/A FLEMING COUNTY HOSPITAL;
KRISTAL HUMPHRIES; AND GENA
BARKER


**OPINION OF THE COURT BY JUSTICE KELLER**

**<u>AFFIRMING</u>**

Kimberly Johnson appeals from the Court of Appeals' denial of her

petition for a writ of mandamus to direct Judge Stockton Wood of the Fleming

Circuit Court to issue various orders in her favor. After a thorough review of the law, we affirm the Court of Appeals.

## I. BACKGROUND

In November 2014, Johnson presented to her primary care provider, Dr. Amanda Applegate, complaining of pain in her right breast and was consequently sent for a screening mammogram. Her screening mammogram was completed at Fleming County Hospital[1] on December 19, 2014. Radiologist Dr. Richard Hartman interpreted this mammogram, found it inconclusive, and recommended a follow-up exam. Shortly thereafter, Johnson received a telephone call from a representative of FCHD asking that she return for more testing. Johnson returned to FCHD on January 9, 2015, where she underwent a diagnostic mammogram as well as an ultrasound of her right breast. These studies were performed by a radiology technologist, Radiology Tech #1,[2] and read by radiologist Dr. Jennifer Hagenschneider. The results of these studies and the doctors' recommendations based on them, as well as the information Johnson received about these studies, are fervently disputed by the parties.

According to Johnson, on January 11, 2015, an FCHD radiology technologist, Radiology Tech #2, printed out a mammogram notification letter from FCHD's system indicating that Johnson's second mammogram "revealed

---

[1] At the time of Johnson's mammography examinations, Fleming County Hospital was owned by the Fleming County Hospital District, which we will refer to as FCHD. On July 31, 2015, FCHD sold the hospital to Fleming Medical Center, LLC, which we will refer to as FMC.

[2] Only one of the radiology technologists involved in this case is a named party to this litigation. We have chosen to refer to them as Radiology Tech #1 and Radiology Tech #2.

2

mammographic findings requiring attention." Radiology Tech #2 hand-wrote on this letter that she would "attempt to locate [Johnson's] old films. . .. This may take a few days, but I will let you know."

According to Johnson, on January 15, 2015, Radiology Tech #2 printed out a second mammogram notification letter informing Johnson that her "recent mammogram examination ... revealed no evidence of cancer." Johnson, however, continued to experience right breast pain throughout 2015. In September 2015, Dr. Applegate referred Johnson to a surgeon at St. Elizabeth Hospital who diagnosed Johnson with malignant invasive ductal carcinoma which had metastasized.

Johnson filed a complaint against Fleming Medical Center, LLC (FMC); Dr. Applegate and her practice, Family Medicine Associates of Flemingsburg, P.S.C. (collectively referred to as Dr. Applegate); and Dr. Hagenschneider, Dr. Richard Hartman, Dr. Charles Clarke, and their practice, Maysville Radiology Associates, P.S.C. (collectively referred to as the radiology defendants) on September 23, 2016, alleging medical negligence. After filing her lawsuit, Johnson learned that at the time of her mammography examinations, Fleming County Hospital was owned by the Fleming County Hospital District (FCHD), which then sold the hospital to Fleming Medical Center LLC (FMC) on July 31, 2015. On November 21, 2016, Johnson filed an amended complaint substituting FCHD for FMC.

Dr. Applegate was served with Johnson's complaint on September 26, 2016, and on September 30, 2016, Dr. Applegate contacted Radiology Tech #2

3

regarding Johnson's mammograms at FCHD. During this conversation, Radiology Tech #2 told Dr. Applegate that Johnson had been scheduled for a biopsy, and Dr. Applegate requested to see a copy of the document referencing a biopsy. Later that day, Radiology Tech #2 provided a screenshot of Johnson's record from the hospital's mammogram database to Dr. Applegate which noted the record had been modified[3] on that day. The screenshot showed that Johnson had been scheduled for a biopsy in January 2015, but her medical records showed no biopsy was done during that time frame. The parties have referred to this screenshot as "the biopsy screenshot." Johnson alleges that this screenshot was taken only after Radiology Tech #2 edited Johnson's medical record to delete any reference to the "cancer free" diagnosis and letter but to leave reference to the biopsy.[4]

On the same day she received the screenshot, Dr. Applegate provided it to her attorney. Dr. Applegate's attorney subsequently provided the biopsy screenshot to the attorneys for the other defendants, but it was not turned over to Johnson. Johnson alleges that prior to her finally receiving the screenshot, the defendants offered perjured deposition testimony and provided false answers to written discovery. She also alleges that additional changes were

---

[3] The accessing of the mammogram database and the viewing and/or modification of content in that database has been the subject of intense debate among the parties. It has required coordination with the Alabama software manufacturer and has produced evidence that every time certain fields in a record are accessed, the system shows an updated "Last Modified" date.

[4] Almost every action taken by each of the parties, as well as their motivations for each action, is vigorously disputed. We have made our best effort to distill the facts to only those necessary for an understanding of our decision.

made to Johnson's medical records, including the printing of fake mammogram notification letters that were included in subpoenaed medical records from Fleming County Hospital.

In December 2017, Johnson filed a second amended complaint adding claims against FMC, Radiology Tech #1, Radiology Tech #2, and Gena Barker, Radiology Tech #1's supervisor. The claim against Radiology Tech #2 was one of medical negligence. The other claims were centered around that of a civil conspiracy engaged in by FMC, radiologist Dr. Hagenschneider, Barker, and Radiology Tech #1 alleging spoliation and fabrication of evidence. Johnson alleged that Radiology Tech #1, at the requests of her supervisor Barker and Dr. Hagenschneider, printed two fake mammography notification letters and included them in Johnson's certified medical records.

On February 22, 2018, and still before Johnson had knowledge of the biopsy screenshot, Johnson settled her claims against FCHD and Radiology Tech #2. The parties expressly recognized that discovery was not yet complete and assumed the risk of possible discovery of additional or different facts. Johnson claims that this settlement was procured by fraud.

On April 26, 2018, Johnson filed a third amended complaint adding multiple claims, including spoliation, abuse of process, obstruction of justice, tortious interference with expectancy, and conversion.

The biopsy screenshot was not turned over to Johnson until November 21, 2018, after the trial court ordered the defendants to produce all documents that they had reviewed which were relevant to Johnson. However, as

5

demonstrated by her amended complaints, Johnson already had suspicions that changes had been made to her medical data and believed fake mammogram notification letters had been produced.

On January 14, 2019, Johnson filed an omnibus motion to strike the defendants' answers, for costs and attorneys' fees, to compel discovery and depositions of the attorneys involved, for expedited discovery, and for leave to amend her complaint to reassert claims against FCHD and its insurer sounding in bad faith and fraudulent inducement to a contract. During December 2019 and January 2020, the trial court entered fourteen separate orders. In those orders, it denied Johnson's motion to strike the defendants' answers. It reserved on her motion for costs and attorneys' fees. It ordered the defendants to produce certain discovery but denied Johnson's request to invoke the crime-fraud exception to the attorney-client privilege so that she could depose the attorneys for the defendants. The trial court also denied Johnson's motion to amend the complaint. The trial court would not allow Johnson to reassert claims against FCHD based on the settlement agreement she had entered into and her unwillingness to return the money she received from the settlement. The court also noted that "[s]poliation is not a recognized tort claim in the Commonwealth of Kentucky and this Court is not in the position to allow an amended complaint that attaches a claim that cannot be recovered."

On May 27, 2020, and after Johnson's petition for a writ of mandamus was filed in the Court of Appeals, the trial court dismissed Johnson's third

amended complaint against Radiology Tech #1, Gena Barker, their employer FMC,[5] and Dr. Hagenschneider for fabrication of medical records concluding that "the law as it currently exists in Kentucky does not allow a remedy other than civil penalties to be imposed by the [c]ourt." Later that same day, FMC put forth the theory for the first time that the biopsy note contained on the screenshot may have been a clerical error and intended for a different patient with the same last name, similar patient number, and aged within a year of Johnson who had a mammogram and ultrasound studies completed on the same day as Johnson.

Johnson seeks a writ of mandamus directing the circuit court to: (1) award her attorneys' fees, expert fees, and costs so far expended in the matter; (2) set the matter for trial on damages only; and (3) strike the answers of all the defendants as a sanction for their alleged wrongful conduct. In the alternative, Johnson seeks a writ directing the circuit court to enter orders: (1) awarding her attorneys' fees, expert fees, and costs in the matter; (2) recognizing a tort to address the conduct of the defendants and their attorneys whether sounding in spoliation, fabrication, or obstruction of justice; (3) invoking the crime-fraud exception to the attorney-client privilege and ordering production of counsel for all current and past defendants for depositions; and (4) prohibiting bifurcation

---

[5] FMC argues Johnson's writ petition is moot as to it because it has been dismissed from the case at the trial court level. We need not decide the merits of this argument as we have affirmed the Court of Appeals' denial of Johnson's writ petition on other grounds.

of her medical malpractice claims from proof of the defendants' alleged fraud and attendant torts.

On November 12, 2020, the Court of Appeals issued its order denying Johnson's petition for a writ of mandamus. Specifically, the Court of Appeals held that Johnson failed to show that she has no adequate remedy by appeal. On December 7, 2020, Johnson filed her notice of appeal with this Court as a matter of right.[6]

After Johnson filed her brief with this Court, FMC filed a motion to strike Johnson's brief for failing to conform with CR 76.12(4)(c)(vii) for citing materials outside of the record. Johnson then filed a motion to supplement the record with the items that FMC referred to in its motion to strike. After Johnson filed her reply brief, FMC moved to strike that brief for failing to comply with CR 76.12(4)(b)(ii), CR 76.12(4)(c)(iv), and CR 76.12(4)(c)(vii) for citing materials outside of the record and exceeding the allowable length. All of these motions were passed to the merits. Although we take judicial notice of the trial court orders that are necessary for a thorough review of this matter, we hereby deny Johnson's motion to supplement the record. We further deny FMC's motion to strike Johnson's briefs, as this is an extreme remedy, but take the opportunity to remind these parties and all future litigants to refrain from citing to

---

[6] Kentucky Rule of Civil Procedure (CR) 76.36(7)(a) ("An appeal may be taken to the Supreme Court as a matter of right from a judgment or final order in any proceeding originating in the Court of Appeals."); *see also* KY. CONST. § 115 ("In all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court.").

8

materials outside of the record, as this Court's review is constrained by the record from the lower court, in this case, the Court of Appeals.

## II. ANALYSIS

### A. Writ Standard

We begin our writ analysis by reiterating that "[t]he issuance of a writ is an extraordinary remedy that is disfavored by our jurisprudence. We are therefore 'cautious and conservative both in entertaining petitions for and in granting such relief.'" *Caldwell v. Chauvin*, 464 S.W.3d 139, 144-45 (Ky. 2015) (citing *Ridgeway Nursing & Rehab. Facility, LLC v. Lane*, 415 S.W.3d 635, 639 (Ky. 2013); *Bender v. Eaton*, 343 S.W.2d 799, 800 (Ky. 1961)). Writs "are truly extraordinary in nature and are reserved exclusively for those situations where litigants will be subjected to substantial injustice if they are required to proceed." *Indep. Order of Foresters v. Chauvin*, 175 S.W.3d 610, 615 (Ky. 2005). Mandamus is an extraordinary remedy which compels the performance of a ministerial act or mandatory duty where there is a clear legal right or no adequate remedy at law. *County of Harlan v. Appalachian Reg'l Healthcare, Inc.*, 85 S.W.3d 607, 613 (Ky. 2002).

Extraordinary writs may be granted in two classes of cases. The first class requires a showing that "the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court." *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004). The second class requires a showing that "the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no

9

adequate remedy by appeal or otherwise." *Id.* This second class also usually requires a showing that "great injustice and irreparable injury will result if the petition is not granted." *Id.* There are, however, special cases within the second class of writs that do not require a showing of great injustice and irreparable injury. In those special cases, a writ is appropriate when "a substantial miscarriage of justice" will occur if the lower court proceeds erroneously, and correction of the error is necessary "in the interest of orderly judicial administration." *Chauvin,* 175 S.W.3d at 616 (quoting *Bender,* 343 S.W.2d at 801).

> Regarding the certain special cases exception, we have stated,
>
> [I]n certain special cases this Court will entertain a petition for prohibition in the absence of a showing of specific great and irreparable injury to the petitioner, provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, and correction of the error is necessary and appropriate in the interest of orderly judicial administration. It may be observed that in such a situation the court is recognizing that if it fails to act the administration of justice generally will suffer the great and irreparable injury.

*Bender,* 343 S.W.2d at 801. We have applied the certain special cases exception when "the action for which the writ is sought would violate the law, e.g., by breaching a tightly guarded privilege or by contradicting the requirements of a civil rule." *Trude,* 151 S.W.3d at 808 (citing *Wal-Mart Stores, Inc. v. Dickinson,* 29 S.W.3d 796, 803 (Ky. 2000); *Bender,* 343 S.W.2d at 803).

Johnson seeks this writ of mandamus under the certain special cases exception to writs of the second class. She argues, citing to this Court's recent decision in *Beck v. Scorsone,* 612 S.W.3d 787 (Ky. 2020), that unavailability of

10

an adequate remedy by appeal is not a prerequisite to the issuance of a writ under the certain special cases exception. In *Beck*, we "proceeded[ed] directly to the merits of the dispute" because the merits were "uncomplicated and doing so would promote the end of 'judicial economy in limiting the breadth of analysis appellate courts undertake when considering writs.'" *Id.* at 791. However, the procedure used in *Beck* is only used in very rare circumstances and only done so when the merits issue is uncomplicated. *See So. Fin. Life Ins. Co. v. Combs*, 413 S.W.3d 921, 927 n.20 (Ky. 2013). The prerequisites exist "expressly to limit 'the number of writ cases that proceed to the merits of the controversy' because writ proceedings 'necessitate an abbreviated record which magnifies the chance of incorrect rulings that would prematurely and improperly cut off the rights of litigants.'" *Caldwell*, 464 S.W.3d at 145 (footnotes omitted). The approach Johnson advocates we take in this case is only appropriate if an analysis of the merits is less complicated and burdensome on the courts than an analysis of the prerequisites. That simply is not the case here.

Following the normal approach to writ cases, even in cases seeking a writ under the certain special cases exception, the party seeking the writ must show that there is no adequate remedy by appeal. *Chauvin*, 175 S.W.3d at 617. "No adequate remedy by appeal" means that the party's injury "could not thereafter be rectified in subsequent proceedings in the case." *Id.* at 615. Johnson argues that the Court of Appeals erred in its analysis "because it made no determination as to whether the fact of fabrication—rather than the relief

11

requested—was reviewable." She further argues that the question before the Court today is "whether an order finding that Kentucky's trial courts are without power to address fabrication—either under the rules of evidence or the rules of tort law—is reviewable on direct appeal." We, however, need not answer this specific, yet rather esoteric, question. Instead, we must determine whether Johnson's specific injuries, i.e., the trial court's denial of her various motions, can be remedied by appeal.

We summarized the standard for appellate review of a lower court's decision in a writ action in *Appalachian Racing, LLC v. Commonwealth*:

> We employ a three-part analysis in reviewing the appeal of a writ action. We review the Court of Appeals' factual findings for clear error. Legal conclusions we review under the de novo standard. But ultimately, the decision whether or not to issue a writ of prohibition is a question of judicial discretion. So review of a court's decision to issue a writ is conducted under the abuse-of-discretion standard. That is, we will not reverse the lower court's ruling absent a finding that the determination was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles."

504 S.W.3d 1, 3 (Ky. 2016) (internal citations omitted). "[T]he existence of a remedy by appeal, adequate or not, is a question of law, which we review de novo." *Newell Enter., Inc. v. Bowling*, 158 S.W.3d 750, 755 (Ky. 2005), *overruled on other grounds by Interactive Media Entm't & Gaming Ass'n v. Wingate*, 320 S.W.3d 692 (Ky. 2010).

The first requirement for a writ under the second class is that the party requesting the writ have no adequate remedy by appeal. Because an adequate remedy by appeal exists for each of the errors Johnson alleges, we need only address this requirement.

12

**B. Sanctions**

Johnson first requests a writ of mandamus directing the circuit court to: (1) award her attorneys' fees, expert fees, and costs so far expended in the matter; (2) set the matter for trial on damages only; and (3) strike the answers of all the defendants as a sanction for their alleged wrongful conduct. Because these are all forms of sanctions the trial court can impose for offensive conduct by a party, we will review them together.

Johnson argues that the trial court abdicated its duty to protect against contemptuous conduct by failing to strike the answers of the defendants. This would have resulted in a default judgment on liability, which, in turn, would have resulted in a trial on damages only, as Johnson requested.

However, "[a] trial court 'has broad discretion in addressing a violation of its order[s]' regarding discovery." *Turner v. Andrew*, 413 S.W.3d 272, 279 (Ky. 2013) (citing *Wilson v. Commonwealth*, 381 S.W.3d 180, 191 (Ky. 2012)). This includes the decision to impose, or not impose, even the most severe sanctions against a party for failing to comply with discovery orders. *Id.*

Appellate courts regularly review a trial court's decision of whether to impose sanctions, including that of striking answers and even entering default judgment against a party, on direct appeal. In *Turner*, the trial court dismissed the plaintiff's claims as a sanction for his repeated failure to provide discovery as ordered by the court. *Id.* at 278. However, the trial court failed to enter findings of fact to support the dismissal. *Id.* at 279. Therefore, we remanded the case to the trial court to reconsider sanctions imposed for the discovery

13

violation and for entry of findings of facts to support the imposition of those sanctions. *Id.* at 279-80.

Our appellate courts also review a trial court's decision to not impose sanctions on direct appeal. In *Penman v. Commonwealth,* the Commonwealth failed to comply with the trial court's discovery order by failing to provide the defense with various documents related to the chain of custody of physical evidence. 194 S.W.3d 237, 247 (Ky. 2006), *overruled on other grounds by Rose v. Commonwealth,* 322 S.W.3d 76 (Ky. 2010). In that case, the trial court chose not to sanction the Commonwealth by excluding the evidence at trial. *Id.* We reviewed that decision on direct appeal and held that the trial court did not abuse its discretion. *Id.* at 250.

In this case, Johnson argues that the trial court erred in failing to strike the defendants' answers as a sanction for what Johnson describes as fraudulent conduct. However, the trial court viewed the conduct of the defendants primarily as a discovery violation. For purposes of this writ proceeding, we do the same. Even in doing so, we acknowledge the abhorrent nature of the conduct alleged by Johnson. If the defendants and their respective counsel have truly engaged in the conduct alleged and with the motivations alleged by Johnson, they deserve the severest of sanctions. However, because this is a writ action, we cannot reach the merits of Johnson's allegations at this time. As the issue is presented to us, Johnson has an adequate remedy by appeal for any error that may have occurred in the trial court's refusal to both strike the defendants' answers and set the matter for

14

trial on damages only. The specific nature of any sanctions, if warranted, should be addressed at the time of an appeal.

As for Johnson's argument regarding attorneys' fees, expert fees, and costs, the trial court has yet to enter an order regarding the appropriateness of such sanctions. In fact, the trial court specifically reserved any ruling on the imposition of fees and costs on the defendants. As such, this argument is not ripe for our review.

In the alternative, Johnson seeks a writ directing the circuit court to enter orders: (1) awarding her attorneys' fees, expert fees, and costs in the matter; (2) recognizing a tort to address the conduct of the defendants and their attorneys whether sounding in spoliation, fabrication, or obstruction of justice; (3) invoking the crime-fraud exception to the attorney-client privilege and ordering counsel for all current and past defendants to provide their depositions; and (4) prohibiting bifurcation of her medical malpractice claims from proof of the defendants' alleged fraud and attendant torts. Because we have already addressed her request for an order awarding her attorneys' fees, expert fees, and costs, we need not address it again. We will next address her request that this Court recognize a new tort to address the alleged misconduct of the defendants and their attorneys.

## C. Creation of a New Tort

Johnson requests that this Court recognize a new tort and direct the trial court to do the same. This request is, in essence, a claim that the trial court erred in denying her motion to amend her complaint to include this new tort.

15

In general, errors made in allowing or disallowing amended complaints can be remedied on appeal. In *Estate of Cline v. Weddle*, 250 S.W.3d 330, 335 (Ky. 2008), we reviewed the Court of Appeals' denial of a petition for a writ of mandamus in regard to various issues, one of which was the trial court's denial of a motion to amend the complaint. In that case, we held that "[t]he fact that the Estate might be required to prosecute an appeal to protect its rights does not establish that it has no adequate remedy by appeal." *Id.* We noted that trial courts have "considerable discretion in such matters" and that the "issues may be properly analyzed in more depth if necessary on appeal." *Id.* at 335-36. In doing so, we cited to our predecessor Court's holding in *Farrow v. Downing* that "any error in a trial court's denial of leave to file an amended complaint could be easily redressed in the normal appellate process, thus entitlement to extraordinary relief by writ was not shown." *Id.* at 336 n.12 (citing *Farrow*, 374 S.W.2d 480 (Ky. 1964)).

More specific to this case, the trial court's denial of recognition of a new tort can be remedied on direct appeal. In *Monsanto Co. v. Reed*, salvage workers brought suit against various manufacturers claiming they sustained injuries as a result of exposure to polychlorinated biphenyls in the manufacturers' products. 950 S.W.2d 811, 812 (Ky. 1997). The trial court granted summary judgment in favor of the manufacturers, and the workers appealed. *Id.* at 812-13. On direct appeal, "the Court of Appeals recognized as a new intentional tort 'spoliation of evidence,' and remanded the case to the trial court to allow appellees to amend their complaint to seek damages under that

16

theory of recovery." *Id.* at 813. This Court, however, "decline[d] the invitation to create a new tort claim" and reversed the Court of Appeals. *Id.* at 815. Although this Court did not hold in *Monsanto* as Johnson hopes we would eventually hold on her request for the creation of a new tort claim, *Monsanto* is clear evidence that the trial court's refusal to allow Johnson to amend her complaint to include a new tort can be adequately remedied on appeal.

*Giuliani v. Guiler*, 591 S.W.2d 318 (Ky. 1997), provides further support for our holding that the trial court's denial of Johnson's motion to amend her complaint to allege the defendants committed an as-yet unrecognized tort can be remedied on appeal. In *Giuliani*, the trial court denied the minor children of the deceased a claim for loss of parental consortium and granted partial summary judgment on that claim. *Id.* In a direct appeal of the trial court's grant of partial summary judgment, this Court acknowledged that it "has a responsibility to change" the common law "[w]hen the common law is out of step with the times." *Id.* at 319. We then went on "to recognize that children have a right to be compensated for their losses when such harm has been caused to them by the wrongdoing of another." *Id.* at 320. Accordingly, we held "that Kentucky recognizes the claim of minor children for loss of parental consortium." *Id.* at 323. We emphasize that this was done on direct appeal of the trial court's grant of partial summary judgment rather than through a writ.

We further note that a decision of whether to create a new tort is a landmark one for this Court to make. We do not often recognize new torts, and any decision of whether to do so is best made with a fully developed record. As

17

such, Johnson's request that we recognize a new tort to address the alleged misconduct of the defendants and their attorneys is inappropriate at this time through a writ action, but may be revisited upon appeal, as appropriate.

**D. Crime-Fraud Exception to the Attorney-Client Privilege**

Johnson next argues that the trial court erred in failing to invoke the crime-fraud exception to overcome the attorney-client privilege and in refusing to order production of the attorneys for the defendants to provide their depositions. This error, if there was any, is akin to the denial of discovery, and we will address it this way.

"The rule in Kentucky, as well as in most other jurisdictions, has long been that discovery rulings are generally interlocutory and are generally not subject to mandamus review." *Inverultra, S.A. v. Wilson*, 449 S.W.3d 339, 345 (Ky. 2014) (citations omitted). This is especially true for an order denying discovery as those orders are "remed[ied] by way of appeal." *Wal-Mart Stores*, 29 S.W.3d at 800 (citing *Roberts v. Knuckles*, 429 S.W.2d 29 (Ky. 1968)). We have recognized some limited exceptions to this general rule but only when the circumstances of the particular case evidenced "[a] genuine exigency [that] might well call into question the adequacy of an appeal." *Inverultra*, 449 S.W.3d at 346 (citing *Meredith v. Wilson*, 423 S.W.2d 519 (Ky. 1968); *Texaco, Inc. v. Borda*, 383 F.2d 607, 609 (3rd Cir. 1967)). Johnson has made no such showing in this case. Further, the "general risk of conceivable information loss, like 'inconvenience, expense, annoyance and other undesirable aspects of litigation,' . . . is simply one of the ordinary costs of litigation, and we have held

18

time and time again that such costs do not make an appeal an inadequate remedy." *Id.* at 347 (citations omitted).

Turning specifically to the denial of discovery from the defendants' attorneys, we find *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991) to be instructive. In *Steelvest*, the trial court overruled the plaintiff's motion to compel discovery from the attorney of one of the defendants finding that the attorney-client privilege was applicable. *Id.* at 487. After the trial court granted summary judgment in favor of all the defendants, the plaintiff appealed. *Id.* at 479. On direct appeal, we held that the attorney-client privilege could not be used to prevent discovery of the information sought, as the attorney assisted his client in a scheme that possibly constituted a breach of fiduciary duties. *Id.* at 488. For this and other reasons, we reversed the Court of Appeals' affirmance of the trial court and remanded the case to the circuit court for further proceedings. *Id.*

Just as we reviewed a denial of discovery from a party's attorney in *Steelvest* on direct appeal, we can do the same in this case, should the need arise. Accordingly, Johnson has an adequate remedy by appeal for any error made by the trial court in its denial of Johnson's request to produce the defendants' attorneys for depositions, and the issuance of a writ is not appropriate.

### E. Bifurcation

Finally, Johnson asks this Court to direct the trial court to enter an order prohibiting bifurcation of her medical malpractice claims from proof of

the defendants' alleged fraud and attendant torts. This claim, however, is not yet ripe. The trial court denied Johnson's motion to preclude bifurcation stating,

> The Court DENIES Plaintiff's Motion to Preclude Bifurcation at this time. The Court will take into consideration any party's unfiled motion which may seek to bifurcate the trial on matters raised. Depending on what matters end up going to trial, there may be good cause shown to bifurcate. No decision is rendered in this Order.

Although Johnson alleges the trial court "expressed a preference for bifurcating proof," it is clear from the trial court's order that no decision was made as to bifurcation. Thus, no potential error has yet been made. Accordingly, a writ of mandamus is inappropriate on this issue.

## III.   CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals.

All sitting. All concur.

COUNSEL FOR APPELLANT:

J. Dale Golden
Laraclay Drake Parker
Golden Law Office

APPELLEE:

Honorable Stockton B. Wood, Judge of the Fleming Circuit Court

COUNSEL FOR REAL PARTIES IN INTEREST, FAMILY MEDICINE
ASSOCIATES OF FLEMINGSBURG, P.S.C.; FAMILY MEDICINE ASSOCIATES
OF FLEMINGSBURG (ASSUMED NAME CORPORATION OF FAMILY MEDICINE
ASSOCIATES OF FLEMINGSBURG, P.S.C.), AND DR. AMANDA APPLEGATE:

Clayton Lee Robinson
Courtney Lynn Soltis
Robinson & Havens, PSC

COUNSEL FOR REAL PARTIES IN INTEREST, FLEMING COUNTY MEDICAL
CENTER, LLC D/B/A FLEMING COUNTY HOSPITAL, GENA BARKER, AND
KRISTAL HUMPHRIES:

Ian Charles Baird Davis
Bradley Royal Hume
Chad Owens Propst
Bryan Todd Thompson
Joseph Andrew Wright
Thompson Miller & Simpson, PLC

COUNSEL FOR REAL PARTIES IN INTEREST, MAYSVILLE RADIOLOGY
ASSOCIATES, P.S.C, DR. CHARLES CLARKE, DR. RICHARD S. HARTMAN,
AND DR. JENNIFER HAGENSCHNEIDER:

Benny Charles Epling, II
Steven Brent Black
Law Offices of Benny C. Epling, II, PSC

21