Debbie Ellen REHM, Individually and as Executrix of the Estate of James David Rehm and Nicholas James Rehm and Christina Marie Rehm, by and through their Parent, Guardian, and Next Friend, Debbie Ellen Rehm, Appellants,

v.

Honorable Denise CLAYTON, Judge, Jefferson Circuit Court, Appellee,

and

Cardinal Insulation; Garlock; Ajax Magnathemic; General Electric and Former Defendants; Ford Motor Company; Philip Morris; and American Standard, Real Parties in Interest.

No. 2003–SC–0533–MR.

Supreme Court of Kentucky.

April 22, 2004.

Kenneth L. Sales, Joseph D. Satterley, Sales, Tillman & Wallbaum, Louisville, Counsel for Appellants.

Denise Clayton, Louisville, for Appellee.

Armer H. Mahan, Jr., Joseph P. Hummel, Lynch, Cox, Gilman & Mahan, PSC, Louisville, Counsel for Real Party in Interest, Cardinal Insulation.

John K. Gordinier, Pedley, Zielke & Gordinier, PLLC, Louisville, Counsel for Real Party in Interest, Garlock.

James M. Gary, Weber & Rose, PSC, Louisville, Counsel for Real Party in Interest, Ajax Magnathemic.

Scott T. Dickens, John David Dyche, Tachau, Maddox, Hovious & Dickens, PLC, Louisville, Counsel for Real Party in Interest, General Electric and Former Defendants.

Byron N. Miller, Thompson & Miller, PLC, Louisville, Counsel for Real Party in Interest, Ford Motor Company.

William D. Grubbs, David T. Schaefer, Woodward, Hobson & Fulton, LLP, Louisville, Counsel for Real Party in Interest, Philip Morris.

J. Mark Grundy, Melissa Norman Bork, Greenebaum, Doll & McDonald, Louisville, Counsel for Real Party in Interest, American Standard.

Opinion of the Court by Justice KELLER.

## I. INTRODUCTION

Appellants appeal as a matter-of-right [1] from a Court of Appeals's order that denied their petition for a writ prohibiting the trial court from staying discovery in a civil action pending the outcome of the appeal of summary judgments, which had dismissed some of the defendants in the case. Appellants alleged that the discovery stay "causes irreparable injury to [Appellants] and [their] ability to properly prepare [their] case." The Court of Appeals denied the petition after finding that the trial court did not abuse its discretion in staying discovery.[2] We hold that the trial court's denial of discovery was an abuse of its discretion, and therefore, we reverse and remand the case to the Court of Appeals for it to issue a writ directing the trial court to permit discovery in the underlying case.

## II. BACKGROUND

In February 2001, the Appellant Debbie Ellen Rehm and her now-deceased husband, James David Rehm, ("James Rehm")[3] both individually and on behalf of their two minor children, filed an action against numerous defendants alleging that James Rehm had been injured by his exposure to asbestos-containing products at multiple job sites where he had worked while in the employment of Rapid Installation, which was in the business of manufac-

---

1. CR 76.36(7)(a).

2. Although the Court of Appeals stated that "the Court is not persuaded that petitioners have demonstrated with reasonable specificity any harm of an irreparable nature they would suffer through the delay, the Court proceed[ed] to consider the merits of [the] original action."

3. Mr. Rehm died on July 25, 2002, and by amended complaint, Debbie Ellen Rehm, as executrix of his estate, was substituted as a party and thereby revived the action asserted by him. CR 25.01. Debbie Ellen Rehm, alone, maintains the action on behalf of the minor children.

turing, selling, installing, and maintaining industrial conveyor systems. The complaint and a subsequent amended complaint asserted both product liability and premises liability claims against one defendant, General Electric Company ("GE"), and either, but not both, product liability or premises liability claims against the other defendants. The product liability claims were based generally on allegations that the asbestos-containing products were designed, manufactured, distributed, sold, or installed by the product liability defendants on the premises liability defendants' property where James Rehm had worked as a Rapid Installation employee.

In May 2002, the trial court granted summary judgments, which were made final and appealable, to the premises liability defendants, including GE (but only as to the premises liability claim against it), on the basis of their "up-the-ladder" worker's compensation defenses[4] and, accordingly, dismissed Appellant's premise liability claims. Appellants appealed the summary judgments and that appeal remains pending in the Court of Appeals.

Appellants' product liability claims against the remaining defendants, including GE, were scheduled for trial in August 2003; however, in March of that year, on the motion of GE, the trial court stayed both the scheduled trial and all discovery "pending the outcome of the appeal of the dismissal of the premises liability defendants." Appellant then filed an original action in the Court of Appeals requesting a writ prohibiting the trial court from staying discovery. Appellants did not, however, request relief from the trial stay. The Court of Appeals denied Appellants' petition for a writ, and the Appellants appealed the denial to this Court. After reviewing the record and briefs filed by Appellants and the real parties in interest,[5] we reverse and remand to the Court of Appeals for it to issue a writ vacating the trial court's stay of discovery.

## III.  ANALYSIS

"Due to the extraordinary nature of its relief—interlocutory intervention by an appellate court, the writ of prohibition remedy is reserved for exceptional circumstances and therefore should be granted only upon a showing that '. . . the lower court is about to act incorrectly, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury would result.' "[6]  "If [these] procedural prerequisites for a writ are satisfied, 'whether to grant or deny a petition for a writ is within the appellate court's discretion.' "[7]  And, appellate review of that decision is limited to an abuse-of-discretion inquiry, except for issues of law which are reviewed de novo.[8]

---

4.  KRS 342.690(1).

5.  GE, Philip Morris USA, Inc., American Standard, Inc., and Ford Motor Company filed briefs as real parties in interest.  CR 76.36(8).

6.  *Lewis LP Gas, Inc. v. Lambert*, Ky., 113 S.W.3d 171, 175 (2003) (footnotes omitted).

7.  *Peterson v. Shake*, Ky., 120 S.W.3d 707, 711 (2003) (Keller, J., concurring).

8.  *Kentucky Labor Cabinet v. Graham*, Ky., 43 S.W.3d 247, 251 (2001) ("As the issues on this appeal are to be decided as a matter of law, our review of the Court of Appeals decision is not confined to an abuse of discretion inquiry."); *Southeastern United Medigroup, Inc. v. Hughes*, Ky., 952 S.W.2d 195, 199–200 (1997). *Accord* 63C Am Jur 2d *Prohibition* § 88 (1997) ("It has been held that the denial of a writ of prohibition will not be overturned unless it is shown that the lower court abused its discretion or acted in an arbitrary, unreasonable, or unconscionable manner in refusing to issue the writ." (footnotes omitted)).

■ In the present case, although the Court of Appeals stated that it "[was] not persuaded that [Appellants] [had] demonstrated with reasonable specificity any harm of an irreparable nature they would suffer through the delay," it elected "to consider the merits of [the] original action." The Court then correctly noted that "[w]hether to postpone proceedings in an action rests within the sound discretion of a trial court." But, without any recitation of the trial court's findings or description of its rationale, the Court of Appeals concluded that "the trial court thoroughly analyzed the pros and cons of staying all proceedings, balanced the interests of all parties involved, and clearly articulated the rationale for its decision." It then held that the trial court did not abuse its discretion in deciding to stay discovery, stating "the trial court is the tribunal that is the most intimately familiar with the complexities and the ramifications of this large asbestos case and we shall not substitute our own judgment for it." Accordingly, the Court of Appeals denied the petition.

Because the Court of Appeals deferred to the trial court's rationale in its denial of Appellants' petition, our inquiry must, therefore, focus on the trial court's rationale in staying discovery. The trial court "recognize[d] that going forward with discovery in the products liability action while the premises liability action is on appeal could result in an additional burden on witnesses and defendants, especially GE, if the dismissal is reversed." But, the trial court further recognized that "this burden *alone* is not undue when considering the speculative nature of the appeal and when weighed against the risks of losing evidence and the financial and emotional hardships that a long, indeterminate delay would cause [Appellants] to endure[,]" and found—based on the parties' financial posi-

tions—that "*under normal circumstances, ... GE is in a better position to absorb the burden and risks associated with going forward with discovery.*" Apparently, the trial court did not consider the circumstances before it to be normal because of the problems associated with the "application of apportionment principles" that it conceived would be created by a trial of Appellants' claims against the product liability defendants and a subsequent reversal of the summary judgments that had been granted in favor of the premises liability defendants. The trial court believed that "[t]he application of the principles of apportionment in this case creates substantial and unmanageable complications." It found that "[t]o hold this case in abeyance would cause a great and undue hardship on [Appellants]"; however, it also found that "going forward with the trial would create an undue burden on the numerous dismissed defendants, forcing them to defend themselves in a case in which they have been dismissed and essentially denying them [the] value of their summary judgments." Finding "no workable solution," the trial court reasoned that "[t]he only way for this case to be fairly resolved as to all parties is to hold it in abeyance pending the Court of Appeals decision." Thus, both discovery and trial were ordered stayed pending the outcome of the appeal. We disagree with the trial court's conclusion that a stay of discovery fairly resolved the matter.

First, we would note that although the Court of Appeals apparently assumed irreparable injury but nevertheless denied the petition on other grounds, a discovery stay as extensive as the one ordered by the trial court is likely to cause irreparable injury to the Appellants for which no adequate remedy by appeal exists. As this

Court stated in *Alvey v. Commonwealth*,[9] "[i]t is an unavoidable fact that, as time passes on, memories fade and witnesses become unavailable." And, we would add that, as time passes, evidence is destroyed or lost and physical conditions may change.

Two Kentucky cases are relevant to the issue in the present case. In *Meredith v. Wilson*,[10] an action filed in the Boyle Circuit Court was dismissed for lack of proper venue, and the dismissal order was appealed by the plaintiffs. The plaintiffs in the Boyle Circuit Court action then filed an identical action against the same defendants in the Mercer Circuit Court. On the defendants' motion, the Mercer Circuit Court "entered an order prohibiting the taking of the depositions and substantially suspending any proceedings in the Mercer County litigation until after the disposition of the appeal in the Boyle County case."[11] The plaintiffs filed an original action with this Court's predecessor seeking to lift the discovery stay, and the *Meredith* Court, after noting that "[t]he right of discovery deposition is an important one vouchsafed by the civil rules[,]"[12] noted that "[t]he petitioners alleged without contradiction that important matters involved in the litigation need to be developed by the sought discovery depositions and that the information and evidence now available may be lost in the event of the death of either of the witnesses sought to be interrogated."[13] It then stated "[i]t seems to us that there is no valid basis for denying the right to take the discovery depositions and that failure to grant relief may well subject petitioners to irreparable injury."[14] Ac-

cordingly, it ordered the trial court to "permit[ ] the plaintiffs to proceed to take depositions for discovery, as prescribed by CR 26."[15] In the case at bar, the real parties in interest attempt to distinguish this case from *Meredith* by stating that the harm was more specific in *Meredith* because the two witnesses were known to the petitioner. Because Appellants have not produced a list of witnesses that they would like to depose, the real parties in interest claim that here the alleged harm is purely speculative. We disagree. Although Appellants cannot identify specific persons' testimony that will be lost or the evidence that will disappear, they are not required to do so. "[I]nformation and evidence now available" may be lost as a result of the discovery stay, and that is sufficient. We would add that the purpose of discovery is to uncover witnesses and evidence and secure it for trial. Furthermore, it is only through hindsight that the Appellants will, possibly, be able to identify any witnesses and evidence that it lost, and by then it will be too late.

In *Volvo Car Corp. v. Hopkins*,[16] the trial court entered an order that barred the plaintiffs from contacting potential nonparty witnesses. The plaintiffs filed an original action in the Court of Appeals, which granted the plaintiffs' petition for mandamus and directed the trial court to allow the plaintiffs to contact the witnesses in any manner consistent with the rules of discovery. The Court of Appeals found " 'irreparable harm for which they [the petitioners] have no adequate remedy by appeal' in the fact 'that, if they [the plain-

---

9. Ky., 648 S.W.2d 858, 859 (1983).

10. Ky., 423 S.W.2d 519 (1968).

11. *Id.* at 520.

12. *Id.*

13. *Id.*

14. *Id.* at 521.

15. *Meredith*, 423 S.W.2d at 521.

16. Ky., 860 S.W.2d 777 (1993).

tiffs below] were required to await the outcome of a trial before an appellate court could resolve the issue, the delay could result in the loss of information now available due to fading memories, death or other unavailability of the witnesses.' " [17] This Court affirmed the Court of Appeals and noted approvingly that "[t]he Court of Appeals acted because the delay involved in awaiting final disposition of the case below before addressing the erroneous discovery ruling would likely result in losing discoverable information from witnesses who may have died, or moved, or whose memories might be dimmed by time." [18] The real parties in interest attempt to distinguish *Volvo* from the instant case, stating that the *Volvo* trial court limited and denied discovery while the trial court in this case has merely postponed discovery. Further, the real parties in interest state that *Volvo* involved the quest to keep plaintiffs from contacting people with knowledge of discoverable information; whereas in this case only formal discovery has been held in abeyance and there are no restrictions regarding informal discovery. We fail to see a distinguishing difference between limiting discovery and postponing it, both have the same effect, *i.e.*, a party is prohibited from obtaining discovery not otherwise prohibited by the rules of discovery. And, informal discovery is not a substitute for formal discovery.

In *Landis v. North American Co.*,[19] "[t]he controversy hinge[d] upon the power of a court to stay proceedings in one suit until the decision of another, and upon the propriety of using such a power in a given situation." [20] The Supreme Court held that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and. effort for itself, for counsel, and for litigants." [21] But, the Court stated that "[h]ow this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." [22] Justice Cardozo, writing for the Court, then stated "the supplicant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else[,]" [23] and pointed out that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." [24] And while an "individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted," [25] the *Landis* Court warned that a "stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits[,]" [26] and that a trial court abuses its discretion by ordering "a stay of indefinite duration in the absence of a pressing need." [27]

17. *Id.* at 778.

18. *Id.* at 779.

19. 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936).

20. *Id.*, 299 U.S. at 249, 57 S.Ct. at 163.

21. *Id.*, 299 U.S. at 254, 57 S.Ct. at 166.

22. *Id.*, 299 U.S. at 254–255, 57 S.Ct. at 166.

23. *Id.*, 299 U.S. at 255, 57 S.Ct. at 166.

24. *Landis*, 299 U.S. at 255, 57 S.Ct. at 166.

25. *Id.*, 299 U.S. at 256, 57 S.Ct. at 166.

26. *Id.*, 299 U.S. at 257, 57 S.Ct. at 167.

27. *Id.*, 299 U.S. at 255, 57 S.Ct. at 166.

In *Cherokee Nation of Oklahoma v. U.S.,*[28] the trial court stayed cases indefinitely pending the outcome of other cases. The federal appellate court cautioned that "[t]he trial court's discretion is not, however, without bounds[,]"[29] and instructed trial courts that after identifying a pressing need for a stay, "[t]he court must then balance interests favoring a stay against interests frustrated by the action."[30] And, the appellate court pointed out that "[o]verarching this balancing is the court's paramount obligation to exercise jurisdiction timely in cases properly before it."[31] The trial court had "opined that its order would avoid duplicative litigation and conserve judicial resources."[32] The federal circuit court, however, "conclude[d] that this concern falls short of the "pressing need" required when a trial court seeks to suspend its proceedings indefinitely."[33] Accordingly, the Court held that the trial court abused its discretion by indefinitely staying its proceedings.

■ In the present case, the trial court appears to have stayed discovery because of its concern that, if the summary judgments for the premises liability defendants were reversed on appeal, the premises liability defendants would be required to repeat much of the discovery process and to re-depose most of the same witnesses. The trial court reasoned that this scenario "could result in an additional burden on witnesses and defendants, especially GE, if the dismissal is reversed." We conclude that, when weighed against the potential harm to Appellants, this reason does not justify the ordered discovery stay. As we previously pointed out, a delay as extensive as that imposed here may reasonably be expected to result in dimmed memories, unavailability of witnesses, loss or destruction of evidence, and the changing of physical conditions. The cost and inconvenience associated with the repetition of discovery is insignificant when compared to the harm that may befall Appellants. Additionally, there is a presumption that the summary judgments are valid and will be upheld on appeal; so, the risk is slight that any harm will result from allowing discovery to continue. Accordingly, we hold that the trial court abused its discretion in staying discovery and the Court of Appeals abused its discretion in denying Appellants' petition.

## IV.  CONCLUSION

We reverse the Court of Appeals's order and remand the case to the Court of Appeals for it to issue a writ vacating the trial court's discovery stay.

All concur.

**28.**  124 F.3d 1413 (C.A.Fed., 1997).

**29.**  *Id.* at 1416.

**30.**  *Id.*

**31.**  *Id.*

**32.**  *Id.*

**33.**  *Cherokee Nation of Oklahoma,* 124 F.3d at 1416.