RENDERED: NOVEMBER 21, 2007
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2007-SC-000324-MR

APPALACHIAN REGIONAL HEALTHCARE, INC.        APPELLANT

V.

ON APPEAL FROM COURT OF APPEALS
CASE NUMBER 2007-CA-000092
PIKE CIRCUIT COURT NO. 06-CI-001096

FINAL

DATE 12-13-07 [signature] DC

HONORABLE EDDY COLEMAN, JUDGE,
CIRCUIT COURT

AND

THE ESTATE OF PAUL CONNER BREWER, BY AND
THROUGH SHAWN BAKER, ADMINISTRATRIX;
AND SHAWN BAKER, INDIVIDUALLY
(REAL PARTIES IN INTEREST)        APPELLEES

**OPINION OF THE COURT BY JUSTICE NOBLE**

**<u>REVERSING</u>**

This matter is before the Court on the Court of Appeals's denial of a petition for a writ of prohibition. Appellant, Appalachian Regional Healthcare, Inc., sought the writ to bar the circuit judge, who had recused himself from the case, from further participating in the matter, including hearing a motion to reconsider his recusal order. The Court of Appeals applied the wrong standard, and failed to address whether the trial judge was proceeding or about to proceed outside his jurisdiction. Because the action Judge Coleman has proposed to take exceeds his jurisdiction, and a writ is an appropriate means of limiting his action to within his jurisdiction, the Court of Appeals erred by not granting the requested writ.

## I. Background

The underlying case involves claims of medical negligence and fraud brought against Appellant in Pike Circuit Court by Shawn Baker, both individually and in her representative capacity on behalf of the estate of her deceased child. It was originally assigned to Division II of the circuit court to be heard by Judge Steven Combs. At a hearing on a motion to dismiss or change venue in November 2006, Judge Combs recused himself from the case under KRS 26A.015(2)(d)(1) because his sister-in-law was the Secretary-Treasurer and a trustee for Appellant. He transferred the case to the other division of the Pike Circuit Court where it was to be heard by Judge Eddy Coleman.

Judge Coleman set the case for a hearing on the motion to dismiss or change venue on December 15, 2006. That day a Notice of Entry of Appearance of two attorneys—C.V. Reynolds and Lee Smith—as co-counsel for Appellant was filed with the court, along with a motion to recuse Judge Coleman from the case because he is the brother-in-law of Mr. Smith and therefore disqualified under KRS 26A.015(2)(d)(2). Ms. Baker's attorney received copies of the motions just a few minutes before the hearing.

At the hearing, Judge Coleman orally granted the recusal motion. In granting the motion, he specifically noted that he had not yet made any decisions in the case, from which it could be inferred that the recusal motion was not part of a strategy to remove him after he had ruled against Appellant. His recusal decision is reflected by a handwritten order on his docket sheet, which was entered by the circuit clerk on December 21, 2006.

On December 19, 2006, Ms. Baker's attorney filed a motion asking Judge Coleman to reconsider his verbal ruling and requesting an opportunity to respond to the recusal motion in writing since he had received so little notice of it prior to the hearing. On December 22, 2006, Ms. Baker's attorney also filed a motion to disqualify Mr. Smith as counsel for Appellant. In an order dated January 5, 2007, Judge Coleman set both motions for a hearing on February 2, 2007.

Several days later, Appellant filed the underlying writ petition with the Court of Appeals seeking to bar Judge Coleman from any further participation in the case, including the motion to reconsider and the motion to disqualify Mr. Smith, on the ground that he no longer had any jurisdiction over the matter. While the petition was pending, Judge Coleman held the previously scheduled hearing on February 2. During the hearing, the attorneys agreed that Judge Coleman should withhold ruling on the pending motions until the Court of Appeals decided the writ petition. The judge also agreed, and held the matter in abeyance.

On April 17, 2007, the Court of Appeals denied the petition. In its order, the court held that a lack of an adequate remedy on appeal was a prerequisite for granting a writ, even when the controversy involves the lower court's jurisdiction, and that because Appellant could obtain relief on appeal, it could not obtain relief by way of a writ of prohibition.

The writ petition having been an original action in the Court of Appeals, this appeal followed as a matter of right. Ky. Const. § 115.

## II. Analysis

### A. The Writ Standard

The writ of prohibition is extraordinary in nature, and the courts of this Commonwealth "have always been cautious and conservative both in entertaining petitions for and in granting such relief." Bender v. Eaton, 343 S.W.2d 799, 800 (Ky. 1961). To put it simply, "[e]xtraordinary writs are disfavored . . . ." Buckley v. Wilson, 177 S.W.3d 778, 780 (Ky. 2005). In order to facilitate this policy of limiting the extraordinary writs to truly extraordinary situations, petitioners are required to satisfy one of two tests to determine whether the remedy of a writ is even available. Those tests, which essentially break writs down into two distinct classes, are as follows:

> A writ of prohibition may be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

Hoskins v. Maricle, 150 S.W.3d 1, 10 (Ky. 2004). In Hoskins, the Court returned to the more stringent writ standard applied in older cases, specifically Bender v. Eaton and Chamblee v. Rose, 249 S.W.2d 775 (Ky. 1952), from which it had departed in the preceding two decades. Hoskins was an express attempt to reset the law of writs by removing the inconsistencies that had crept into various cases.

However, in denying the writ in this case, the Court of Appeals relied not on Hoskins, but on Middle States Coal Co., Inc. v. Cornett, 584 S.W.2d 593 (Ky. App. 1979), presumably because that case addressed facts very similar to those in this one. Unfortunately, Middle States Coal was in the set of cases that Hoskins was intended to correct. While Middle States Coal recited the writ standard that was re-adopted in

4

Hoskins, id. at 594, it nevertheless went on to confuse the two separate classes of

cases in which a writ may be granted:

> It makes no difference whether the question of disqualification is labelled as one of "jurisdiction" or otherwise. In either instance the extraordinary remedy of prohibition cannot be invoked unless there exists no other adequate remedy. . . .
> The alternate remedy usually available is that of appeal. Unless there is shown to be no adequate appellate remedy, a writ may not issue. Furthermore, the fact that no appeal may be taken from an interlocutory order is not by itself sufficient to invoke the remedy of prohibition.

Id. at 595 (citations omitted).

In Hoskins the Court "depart[ed] from those cases holding that the existence of

an adequate remedy by appeal precludes the issuance of a writ to prohibit a trial court

from acting outside its jurisdiction." 150 S.W.3d at 10. That group of cases includes

Middle States Coal. Under Hoskins, the only requirements under the no-jurisdiction

class of writ cases are a lack of jurisdiction and no remedy through an application to an

intermediate court.

This latter requirement can be confusing given its linguistic similarity to the

requirement in the second class of writs of "no adequate remedy by appeal," which

Hoskins expressly removed from the no-jurisdiction class. After Hoskins, the existence

of an adequate remedy by appeal is merely "a factor for the court to consider in

exercising its discretion" in no-jurisdiction writ cases. Id. at 9. The "no remedy through

an application to an intermediate court" requirement simply means that a writ petition

must be first addressed to the next higher court. See id. at 10. As the Court illustrated

in Hoskins, "Obviously, the Court of Appeals should deny a petition for a writ to prohibit

a district court from proceeding outside its jurisdiction when the petitioner could obtain

the same remedy in circuit court.  . . . Likewise, [the Supreme Court] will not entertain

an original petition for a writ against a circuit court when the same remedy is available in

5

the Court of Appeals." Id. This is not to say, however, that relief is not available on appeal to the then next higher court (for example, an appeal to the Supreme Court of a petition brought properly in the Court of Appeals). Rather, it means only that the writ action must be initiated in the correct court.

Thus, by relying on Middle States Coal, rather than the more recent cases, the Court of Appeals applied the wrong writ standard in evaluating the Appellant's claim, which consists solely of the assertion that Judge Coleman no longer has jurisdiction over the underlying case.

This is not to say, however, that the appellant is automatically entitled to the requested writ. The appellant must still satisfy the Hoskins writ standard for the remedy even to be available. Even then, whether to grant the writ is in the sound discretion of the Court. See id. at 9 ("[U]nder Chamblee and Bender, whether to issue a writ was always discretionary, even when the trial court was acting outside its jurisdiction.").

### B. Jurisdiction

Appellant argues simply that it is entitled to the writ because Judge Coleman lost all jurisdiction in the underlying case when he recused himself. The question of jurisdiction is ordinarily one of law, meaning that the standard of review to be applied is de novo. Grange Mut. Ins. Co. v. Trude, 151 S.W.3d 803, 810 (Ky. 2004); Rehm v. Clayton, 132 S.W.3d 864, 866 (Ky. 2004); see also Kentucky Labor Cabinet v. Graham, 43 S.W.3d 247, 251 (Ky. 2001) ("As the issues on this appeal are to be decided as a matter of law, our review of the Court of Appeals decision is not confined to an abuse of discretion inquiry.").

The first question is whether recusal relates to jurisdiction. As this Court's predecessor noted,

6

> [W]e have often said that an objection to the trial judge raises a question of jurisdiction. The statement, of course, has reference to proper power to act judicially in the matter by reason of disqualification. It is a kind of jurisdiction that may be accepted by a party by the failure to raise objection seasonably. That, it may be said, is based upon the principle of waiver or estoppel.

Dotson v. Burchett, 301 Ky. 28, 30, 190 S.W.2d 697, 698 (1945) (citations omitted). There is no question of waiver or estoppel in this case, as the parties have neither agreed to have Judge Coleman sit on the case, nor had he ruled on any matter before the recusal motion was made (in fact, that was the first time the parties had appeared before him in the matter).

Ordinarily, a judge who has recused from a case loses jurisdiction in the matter. See Wedding v. Lair, 404 S.W.2d 451, 452-53 (Ky. 1966) ("The respondent, having voluntarily vacated the bench in this particular case, lost jurisdiction forever in the absence of an agreement of the parties. He had no right to reassume jurisdiction, and his orders are a nullity."); see also Wade v. Bondurant, 625 S.W.2d 847, 847 (Ky. 1981) ("It is clear that Judge Bondurant did disqualify himself and, as a result he lost jurisdiction forever in the case against appellant. He had no right to reassume jurisdiction, and his order setting the case for trial was a nullity.").

Despite the absolute language in some cases, a recused judge retains some authority in a case. That authority, however, is limited to the power to "perform mere formal and ministerial acts but nothing more." Dotson, 301 Ky. at 30, 190 S.W.2d at 698. The limits of that ministerial power have been examined in two cases, Russell v. Russell, 11 Ky.L.Rptr. 547, 12 S.W. 709 (Ky. 1889), and Dotson v. Burchette.

In Russell, the affidavit that was filed to show why the judge should recuse failed to state sufficient facts to require recusal. After initially recusing, the trial judge subsequently re-entered the case. The Court held that the judge properly resumed

7

jurisdiction, since the affidavit had not shown a disqualification to begin with and a special judge had not yet acted in the matter. 12 S.W. at 710.

Dotson continued to recognize this judicial power under the current Kentucky Constitution (although before the adoption of the current Judicial Article): "We are committed . . . to the proposition that it is within the power of a judge who has erroneously recused himself to revoke the order and resume jurisdiction." Dotson, 301 Ky. at 33, 190 S.W.2d at 700 (citing Russell v. Russell). However, the Court went to great pains to note that judges are not at liberty to revoke their own recusals at will. The Court distinguished the facts in Dotson from Russell by noting that the recusal affidavit in Russell had been "wholly insufficient to establish disqualification . . . ." Id. In contrast, the recusal in Dotson was based on "the judicial declaration of the judge, based upon his own personal knowledge, that he was disqualified by 'relationship and otherwise.'" Id. Despite having "declared his disqualification, not once but twice," id., (and before a special judge was appointed and without a showing of changed conditions), "the judge sua sponte reassumed control, merely saying he was no longer disqualified, and not revealing the facts." Id. at 34, 190 S.W.2d at 700. In light of this, the Court held that the resumption of control by the trial judge was improper and that the case should be heard by a special judge "unless facts properly placed in the record show affirmatively that . . . the regular judge, is no longer disqualified." Id. at 35, 190 S.W.2d at 701.

This Court and its predecessor have approved a recused judge's reentry into a case only under the narrowest of circumstances, namely where the initial recusal motion or affidavit "did not show [the judge] to be disqualified in truth or fact," Dotson, 301 Ky. at 33, 190 S.W.2d at 700, or facts placed in the record show no disqualification. That is

8

not the case here. The recusal in this case was based on the uncontroverted claim that one of the attorneys is Judge Coleman's brother-in-law. At the hearing on the recusal, Ms. Baker's attorney stated that the judge's brother-in-law had entered his appearance in the case. Judge Coleman did not deny the relationship, and he also stated that he had "been down that road before" and it "create[d] some confusion in [his] family." The unquestioned fact of the familial relationship between Judge Coleman and Mr. Smith is clearly sufficient grounds for recusal, unlike the vague allegations of bias found in Russell. See KRS 26A.015(2)(d)(2). Moreover, no evidence has since been placed in the record to contradict the fact of the familial relationship between Judge Coleman and Mr. Smith and no claim has been made that his decision was the result of a mistake about the relationship. Essentially, nothing in the record indicates that Judge Coleman's recusal decision was made in error. Thus, the current case is more akin to Dotson than Russell.

If Judge Coleman hears the motion to reconsider his recusal order on the current record, he will effectively reclaim some discretionary jurisdiction without first having an affirmative showing that he had erroneously disqualified himself. But his recusal from the case means that he has given up any and all discretionary jurisdiction over it. Review of a recusal order is not a mere ministerial act by the judge; it involves a substantive legal decision about the validity of the order. Reconsideration of the recusal order, therefore, is forbidden under Kentucky law as being beyond the jurisdiction of the recused judge.

Once a judge is properly disqualified and recused, reentry into the case would be proper only upon a showing of affirmative evidence that the conflict no longer exists—for example, if the brother-in-law voluntary withdrew from the case—and that no special

9

judge has been appointed. On motion of the parties, the judge could ministerially acknowledge those facts and only then resume jurisdiction. Again, such is not the case here.

Ms. Baker's substantive legal arguments against the necessity of the recusal—that the recusal motion was served with insufficient notice before the hearing, making it a "surprise tactic[], fraud and deception," and that the conflict actually falls to Mr. Reynolds and Mr. Smith, not Judge Coleman—do not change this. Even if these claims had merit, they simply have no bearing on whether Judge Coleman is disqualified, has already recused, and what jurisdiction, if any, he retains over the underlying case. He has no jurisdiction to hear these issues and make a substantive ruling. Because Judge Coleman had no jurisdiction and the writ petition was initiated in the proper court, the Appellant has satisfied the conditions in Hoskins for the availability of the writ. 150 S.W.3d at 10.

As noted above, however, when the remedy of a writ is available, whether to grant it remains within the sound discretion of the court hearing the petition, or, as in this case, the court hearing the appeal of the writ action. See id. at 9. This requires a review of the merits of the Appellant's allegation of error. See id. at 18 ("[O]nly after determining that the prerequisites exist will the court decide whether an error occurred for which a writ should issue."). That review is simple in this case because there is no question that the trial court is proposing to act outside its jurisdiction. Moreover, the interference with the lower court caused by the issuance of a writ in this case will be minimal—limited only to barring a single judge from participating based solely on his own decision to recuse from the case. Thus, this Court concludes that the requested writ of prohibition was appropriate and should have been granted.

For the foregoing reasons, the decision of the Court of Appeals is reversed and this case is remanded to the Court of Appeals for entry of a writ of prohibition in conformity with this Opinion.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Michael J. Schmitt
Porter, Schmitt, Banks & Baldwin
327 Main Street
PO Drawer 1767
Paintsville, Kentucky  41240-1767

Jonathan C. Shaw
Porter, Schmitt, Banks & Baldwin
327 Main Street
PO Drawer 1767
Paintsville, Kentucky  41240-1767


APPELLEE:

Hon. Eddy Coleman, Judge, Circuit Court
172 Division Street
Suite 435
Pikeville, Kentucky  41501


COUNSEL FOR REAL PARTIES IN INTEREST:

H. Michael Lucas
Miller, Kent, Carter & Michael Lucas
131 Division Street
PO Box 852
Pikeville, Kentucky  41502