INVERULTRA, S.A., Appellant

v.

Honorable Steven A. WILSON, Judge, Warren Circuit Court, Appellee

and

Union Underwear, Inc., d/b/a Fruit of the Loom, and Parque Industrial Bufalo, S.A. De C.V., Real Parties in Interest

2013–SC–000345–MR

Supreme Court of Kentucky.

RENDERED: DECEMBER 18, 2014

COUNSEL FOR APPELLANT: Thomas Dulaney Bullock, Lexington, Preston Scott Cecil, Bullock & Coffman, LLP, Frankfort

COUNSEL FOR UNION UNDERWEAR, INC., D/B/A FRUIT OF THE LOOM, REAL PARTY IN INTEREST: Gregory N. Stivers, Scott Donald Laufenberg, Kerrick Bachert Stivers, PSC, Bowling Green

COUNSEL FOR PARQUE INDUSTRIAL BUFALO, S.A. DE C.V., REAL PARTY IN INTEREST: Elizabeth Kenly Ames, English, Lucas, Priest & Owsley, LLP, Bowling Green

OPINION OF THE COURT BY JUSTICE ABRAMSON

Inverultra, S.A., appeals from an order of the Court of Appeals denying writs of mandamus and prohibition. Inverultra seeks the lifting of a protective order and the issuance of orders compelling the real parties in interest, Union Underwear Company, Inc., and Parque Industrial Bufalo, S.A. de C.V., to respond to certain discovery requests Inverultra has propounded in a judgment-enforcement action in the Warren Circuit Court. The Court of Appeals denied relief upon finding that the trial court's protective order did not amount to an abuse of discretion. Although we have different reasons for so concluding, we agree with the Court of Appeals that Inverultra is not entitled to the relief it seeks, and thus affirm the denial of the requested writs.

### RELEVANT FACTS

In September 2011, Appellant Inverultra, S.A., a Panamanian company, was

awarded, in a New York Supreme Court, a $1.8 million judgment against three Honduran companies, one of which is the Appellee/Real Party in Interest, Parque Industrial Bufalo, S.A. de C.V. (ZIP Bufalo). Soon thereafter, in November 2011, Inverultra, pursuant to Kentucky Revised Statute (KRS) 426.955 (the pertinent provision of Kentucky's version of the Uniform Enforcement of Foreign Judgments Act, KRS 426.950–975), registered its New York judgment in the Warren Circuit Court. Warren County is the home of Real Party in Interest Fruit of the Loom, also known as Union Underwear, Inc., and referred to herein as "Union." Union is the parent corporation of a Honduran company, Confecciones dos Caminos S.A. de C.V., which leases commercial property in Honduras from ZIP Bufalo, the judgment debtor. Believing that through its connection with Confecciones, Union might owe money to ZIP Bufalo, Inverultra, with the aforementioned Kentucky judgment in hand, filed in the Warren Circuit Court an affidavit for a writ of garnishment against Union. *See* KRS 425.501 (proceedings for obtaining order of garnishment). The affidavit alleged Union's indebtedness to ZIP Bufalo, and on the basis of that affidavit the circuit court issued to Union an order of garnishment requiring it, among other things, to "hold and safely keep" any funds or property due to ZIP Bufalo and to "answer as garnishee" within twenty days of its receipt of the order.

Union duly answered and averred that it neither owed money to ZIP Bufalo; held any of its property; nor had, then or previously, any contractual relation with it. Almost contemporaneously with Union's answer, ZIP Bufalo moved to quash the order of garnishment, on the ground that Union was not indebted to it, and Inverultra moved for an order enjoining Union to pay into court the nearly $44,000 monthly rental payment due under the Confec-

ciones–ZIP Bufalo lease. In support of its motion, Inverultra noted that the lease referred to Union as Confecciones's parent, was written in English, called for payment in United States currency, included Union among those to be given notices concerning the contract, and included Warren County as a possible venue for claims brought by ZIP Bufalo. Inverultra argued that Confecciones was really Union; that Union was the source of the rental payments; and that to safeguard Inverultra's remedy Union should be ordered to make those lease payments, if not directly to Inverultra, then into court.

Following a hearing on February 3, 2012 (a few days after Union filed its answer to the order of garnishment), the trial court denied both motions—ZIP Bufalo's as moot and Inverultra's on the merits—conditioned, it appears, upon the prompt filing of a "supplemental affidavit" by Bufalo's representative to the effect that ZIP Bufalo "ha[s] no property in Warren County, Kentucky, and that no rent payments are or will be due from Fruit of the Loom [Union] to ZIP Bufalo under the lease between Confecciones dos Caminos S. de R.L. de C.V. and ZIP Bufalo." The company's representative filed the supplemental affidavit, and there the matter stood for about a month, until mid-April 2012.

At that point, Inverultra moved to "propound discovery on Fruit of the Loom." In support of its motion, Inverultra noted that subsequent to the February 3, 2012 garnishment hearing, this Court issued its Opinion in *Inter–Tel Techs., Inc. v. Linn Station Props., LLC,* 360 S.W.3d 152 (Ky. 2012), a case in which a real-property lessor sought to pierce the corporate veil of its lessee so as to impose liability for the lessee's breach on the lessee's parent and grandparent companies. In that case, this Court reviewed the law of corporate veil piercing and discussed factors bearing on a

piercing claim before ultimately concluding that piercing was appropriate. Inverultra represented that it sought discovery from Union "on the [veil-piercing] factors as set forth in *Inter–Tel.*"

The trial court denied Inverultra's motion. It explained that in its view this case was distinguished from *Inter–Tel* by virtue of the fact that unlike *Inter–Tel,* wherein piercing was sought against a judgment debtor that had been rendered judgment proof by the transfer of its assets to its parent and grandparent, piercing was sought here against a complete stranger to the judgment—Confecciones—which had done absolutely nothing to frustrate the enforcement of Inverultra's judgment. On the contrary, Confecciones was performing its contract with judgment debtor ZIP Bufalo, and it was subject, apparently, to process in Honduras, where it had been formed and where it functioned. Veil piercing was not appropriate, the trial court concluded, against a third-party entity that the would-be piercer had not even attempted to proceed against directly.

Undaunted, Inverultra next invoked the execution provisions of KRS Chapter 426, Enforcement of Judgments. Pursuant to KRS 426.010, it had the circuit clerk issue to the sheriff of Warren County a writ of execution against the property of judgment debtor ZIP Bufalo. When the writ was returned "no property found," Inverultra sought leave, pursuant to KRS 426.381,[1] to amend its petition, *i.e.,* its complaint, *Universal C.I.T. Credit Corp. v. Bell High Coal Corp.,* 454 S.W.2d 706 (Ky.1970), so as to institute a supplementary proceeding. That proceeding is what used to be referred to as a *"nulla bona"* (no property) suit. The plaintiff/judgment creditor's aim in such a proceeding, as the statute indicates, is to discover the judgment debtor's property and to subject it to the satisfaction of the judgment. At the outset, the plaintiff must plead the judgment, the execution, the no-property return, and must allege with sufficient particularity the property he claims. *Wilkerson v. Phillips,* 118 Ky. 559, 81 S.W. 691, 692–93 (1904) ("It is not necessary that the petition should describe specifically each bond, note, or chose in ac-

---

1. In pertinent part, KRS 426.381 provides that

> After an execution of *fieri facias,* directed to the county in which the judgment was rendered, or to the county of the defendant's residence, is returned by the proper officer, either as to the whole or part thereof, in substance, no property found to satisfy the same, the plaintiff in the execution may by an amended and supplemental petition filed in the action have the same redocketed and join with the execution defendant or defendants any person believed to be indebted to him or them, or to hold money or other property in which he or they have an interest, or to hold evidences or securities for the same. Upon the filing of such amended petition the case shall be transferred to the equity docket and summons issued thereon. In such supplemental proceeding or in a separate suit in equity against such parties (at his option) the plaintiff may have discovery and disclosure from the judgment credi-

tor and his debtor or bailee, and may have any property discovered, or a sufficiency thereof, subjected to the satisfaction of the judgment.

*Fieri facias* (Latin for "that you cause to be done") was one of the earliest common law execution writs. William H. Loyd, *Execution at Common Law,* 62 U. Pa. L.Rev. 354 (1914). It authorized and directed the sheriff to seize and sell the judgment debtor's goods and chattels. *Id.* Gradually it subsumed similar writs addressed to other types of property. *Id.* As we noted recently in *Wade v. Poma Glass & Specialty Windows, Inc.,* 394 S.W.3d 886 (Ky.2012), the current statutes, including KRS 426.381, providing for provisional remedies and the enforcement of judgments offer a rich, if not altogether clear and straightforward, amalgam of the old and the new, but it is probably safe to say that now *"fieri facias"* is essentially synonymous with a general "writ of execution."

tion ... The averments of the bill must, however, be so definite that any one on reading it can learn what property was intended to be made the subject of the litigation.").[2] Discovery is available to the same extent and in the same manner as in any other lawsuit. CR 69.03.

Inverultra duly sought to plead its judgment and the no-property return of its execution, and to allege, for the same reasons advanced in its prior motions—*i.e.*, the ZIP Bufalo–Confecciones lease and Union's relationship with Confecciones—that "Fruit of the Loom is indebted to ZIP Bufalo." Not surprisingly, perhaps, the trial court understood this new motion as simply a rehash of the motion already twice denied, and so denied as well, for the reasons the court had already given, Inverultra's request to initiate a supplementary (*nulla bona*) proceeding and to have discovery from Union in aid of that proceeding.

That order was entered on September 5, 2012. Inverultra, apparently, urged the court to reconsider,[3] and the trial court seems to have done so. By order entered on or about November 19, 2012, the court acknowledged that Inverultra's request to initiate a proceeding pursuant to KRS 426.381 was not foreclosed by prior rulings and so, in something of a reversal, or at least a clarification, of its September 5 order, granted Inverultra's motion to "file an Amended Petition pursuant to KRS 426.381 and proceed with the discovery authorized by said statute."

By separate order entered on or about that same day, however, the trial court denied Inverultra's motion to compel ZIP Bufalo to respond to discovery requests. Without deciding whether it had personal jurisdiction over ZIP Bufalo,[4] the court explained that

It is clear that Inverultra is seeking discovery from ZIP Bufalo that this court has already denied in the context of discovery requests to Fruit [of the Loom]. Inverultra has presented this Court with no legal or factual reason to reconsider its prior decision. Even if one assumes for the sake of argument that this Court has personal jurisdiction over ZIP Bufalo, the same reasoning the Court applied in denying Inverultra's request to take veil-piercing discovery from Fruit [of the Loom] applies with equal force to Inverultra's attempt to take the same type of discovery from ZIP Bufalo.

According to Inverultra, in early December 2012, it duly filed an amended and supplemental petition, and in aid thereof served discovery requests on both Union and ZIP Bufalo.[5] Union responded with a request for a protective order; ZIP Bufalo

---

**2.** The requirement that execution be attempted stemmed from the more general requirement that legal remedies be exhausted before equitable ones could be invoked. The execution requirement is thus something of a relic, but since the *"nulla bona"* suit is a purely statutory proceeding, the statute must be adhered to. *Cf. Ray v. Peter Fox Sons Co.*, 272 Ky. 497, 114 S.W.2d 750 (1938) (discussing the need for strict statutory compliance with respect to the similar proceeding against alleged garnishees under KRS 425.526).

**3.** This being a CR 81 proceeding, we do not have access to the full record of the trial court, but only to those portions of it the parties have included with their pleadings.

**4.** The lack of a trial court ruling on that question renders Inverultra's companion petition to compel discovery from ZIP Bufalo premature.

**5.** Inverultra refers us to an Order of December 7, 2012 and to its amended petition, but it attached neither of those documents to its brief, and they do not appear to be among the materials otherwise provided to us.

with an objection. In a February 8, 2013 order, the trial court granted the requested protective order: "Union Underwear and F[ruit] O[f the] L[oom] are not required to respond to discovery requests regarding the relationship between these corporations and any subsidiary." It also denied Inverultra's motion to compel discovery from ZIP Bufalo. Union then responded to Inverultra's discovery requests, but the lion's share of its responses were objections premised on the protective order.

Stymied thus in the trial court, Inverultra then brought this present action under CR 81. It seeks a writ in the nature of mandamus requiring "the Warren Circuit Court to lift the prohibitions against discovery on Fruit of the Loom and the Judgment Debtor, ZIP Bufalo." The writ is also to "order that any if there are any payments of any kind from Fruit of the Loom, which in any way constitute a payment under the Lease, or any funds held for the payment of the Lease obligation, that they be paid into the Court." The Court of Appeals' panel, concluding in essence that the trial court was not proceeding erroneously, denied relief.

Inverultra insists that the trial court is proceeding erroneously, that discovery denials are not remediable by appeal, and that without the writ either Inverultra will suffer great injustice and irreparable injury or the administration of justice will suffer an insult severe enough to justify relief. We are not persuaded by these assertions, and accordingly, we affirm the Court of Appeals' denial of relief, although our reasoning differs somewhat from that of the Court of Appeals.

## ANALYSIS

More than fifty years ago our predecessor Court explained that in cases where the trial court has jurisdiction but is al-

leged to be proceeding erroneously, mandamus (or prohibition) relief is generally not available "unless the petitioner establishe[s], as conditions precedent, that he (a) had no adequate remedy by appeal or otherwise, *and* (b) would suffer great and irreparable injury 'if error has been committed and relief denied.'" "This," the Court continued, "is a practical and convenient formula for determining, *prior to deciding the issue of alleged error,* if petitioner may avail himself of this remedy. As a general rule, if he has an adequate remedy by appeal or otherwise, or will not suffer great and irreparable injury, the petition should be dismissed forthwith." *Bender v. Eaton,* 343 S.W.2d 799, 801 (Ky. 1961) (citation omitted; emphasis in the original).

In *Hoskins v. Maricle,* 150 S.W.3d 1, 10 (Ky.2004), this Court reaffirmed the *Bender* approach and held that "[a] writ of prohibition *may* be granted upon a showing ... that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted." We also reaffirmed *Bender's* further explanation that "no adequate remedy by appeal or otherwise" and "great and irreparable injury" are preliminary determinations to be made, generally at least, *"prior to deciding the issue of alleged error."* 150 S.W.3d at 18 (emphasis in original). This approach is necessary lest we short circuit the normal appeal process by deciding issues prematurely; it "reduc[es] interference with other courts[;] ... [and it minimizes our having] to decide issues on an abbreviated and unsubstantiated record." *Cox v. Braden,* 266 S.W.3d 792, 797 (Ky. 2008).

■ Does Inverultra have an adequate remedy by appeal? We believe it

does. Upon affirmance of the Court of Appeals' denial of extraordinary relief, the matter will be remanded to the Warren Circuit Court and Inverultra's *nulla bona* suit will resume. The object of that proceeding is not, as Inverultra suggests, discovery for its own sake. As KRS 426.381 states, the post-execution supplemental proceeding is for the purpose of "subject[ing] to the satisfaction of the judgment" the judgment debtor's property discovered or disclosed in the course of the proceeding. The judgment creditor must allege and prove the existence of such property in the hands of the debtor or a third party, and discovery is available, as in any other suit, to aid the creditor in establishing its claim.[6] The proceeding culminates in a final judgment or order, either granting the relief sought, in whole or in part, or dismissing the suit. *Nunnelley v. Nunnelley*, 246 Ky. 250, 54 S.W.2d 931, 932 (1932) ("In such [*nulla bona*] suit it is settled that a second personal judgment should not be rendered against the defendant.... The purpose of such a suit is to enforce an existing judgment, and a judgment in such a suit should be attuned to that end.") (citation omitted).

At that point, any party aggrieved by the judgment can appeal. If Inverultra does not succeed in proving its claim that Union is the (or a) primary obligor on the ZIP Bufalo–Confecciones lease, it may raise on appeal the discovery restrictions about which it complains here, and an appellate court, on the basis of a fully developed record, can assess whether the trial court abused its discretion. If the trial court did abuse its discretion, Inverultra will be allowed its discovery and given a second crack at showing that Union is indebted to ZIP Bufalo. That remedy is

adequate. Trial courts, after all, routinely make discovery rulings, including rulings that limit discovery, and it cannot be that all such rulings are to be granted mandamus review. That, however, would be the upshot of the rule Inverultra proposes.

■ The rule in Kentucky, as well as in most other jurisdictions, has long been that discovery rulings are generally interlocutory and are generally not subject to mandamus review. *Roberts v. Knuckles*, 429 S.W.2d 29 (Ky.1968); *Byrd v. Maddox*, 313 Ky. 815, 233 S.W.2d 990 (1950). *See also* D.E. Evins, Annotation, *Availability of Mandamus or Prohibition to Compel or to Prevent Discovery Proceedings*, 95 A.L.R.2d 1229 (originally 1964, updated weekly); Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice & Procedure*, § 3935.3 (1996, database updated 2014). We have, as Inverultra notes, departed from that general rule and granted mandamus review in cases where an order allowing or compelling discovery threatens to invade a privilege or some other important privacy interest of the party resisting discovery. *See, e.g., Wal–Mart Stores v. Dickinson*, 29 S.W.3d 796 (Ky.2000). The concern in those cases is that once disclosed, privileged information cannot be "undisclosed" on appeal. *Id.* at 800 ("[O]nce the information is furnished it cannot be recalled.") (citation and internal quotation marks omitted).

In *Wal–Mart*, we recognized a distinction between trial court orders allowing discovery and orders denying discovery, the former often frustrating appellate review, but the latter adequately "remed[ied] by way of appeal." *Id.* (citing *Knuckles*). We have applied that distinction as recent-

---

**6.** The statute states that the "plaintiff may have discovery and disclosure from the judgment creditor [in cases where the claim has been assigned] and his debtor or bailee." The question is not raised, but for the purposes of this case we may assume that "bailee" would encompass a lessee of the debtor such as Confecciones.

ly as 2012, denying mandamus review of an order quashing a discovery subpoena because the discovery denial could be reviewed on appeal. *Motorists Mut. Ins. Co. v. Coleman,* 2012 WL 3637020 (Ky. Aug. 23, 2012).

In *Volvo Car Corp. v. Hopkins,* 860 S.W.2d 777 (Ky.1993), however, this Court referred to the two types of case as simply "opposite side[s] of the same coin," and granted CR 81 relief in a discovery-denial case because "the delay involved in awaiting final disposition of the case below before addressing the erroneous discovery ruling would likely result in losing discoverable information from witnesses who may have died, or moved, or whose memories might be dimmed by time." 860 S.W.2d at 779. The Court followed *Volvo* in *Rehm v. Clayton,* 132 S.W.3d 864 (Ky. 2004), a case in which all discovery had been stayed pending the appeal of a related case. On the way to overruling the discovery stay, the Court made express what was implicit in *Volvo:* To the objection that the purported loss of information was merely speculative, the Court replied that "[a]lthough Appellants cannot identify specific persons' testimony that will be lost or the evidence that will disappear, they are not required to do so. Information and evidence now available may be lost as a result of the discovery stay, and that is sufficient." 132 S.W.3d at 868. Inverultra refers us to *Volvo* and *Rehm* and maintains that it too is at risk of losing discoverable information if consigned to an appeal and thus an appeal is not an adequate remedy. We are convinced, however, that *Volvo* and *Rehm's* broad departure from the general rule against CR 81 review of discovery denials was not well-founded and

that in any event those cases are distinguishable.

*Volvo* and *Rehm* both purport to rely on *Meredith v. Wilson,* 423 S.W.2d 519 (Ky. 1968), another case in which the Court granted mandamus and reversed a discovery stay. The Court did so in *Meredith,* however, not on the generalized ground that information could conceivably be lost, but because "in the circumstances of this case" there was an apparently real risk that "information and evidence now available may be lost in the event of the death of either of the witnesses sought to be interrogated." 423 S.W.2d at 520. The *Meredith* holding makes sense. A genuine exigency might well call into question the adequacy of an appeal. *See, e.g., Texaco, Inc. v. Borda,* 383 F.2d 607, 609 (3rd Cir. 1967) (denying mandamus relief from a discovery stay except allowing the deposition of the seventy-one year old plaintiff in litigation where one "key witness" had died and noting that "[t]he circumstance that 'Mr. Borda is 71 years old' is quite meaningful. It would be ignoring the facts of life to say that a 71–year old witness will be available, to give his deposition or testimony, at an undeterminable future date when a pending criminal antitrust action will have been 'determined.' ").

*Volvo's* extension of *Meredith* and its apparently unlimited and (almost) [7] irrebuttable presumption of exigent loss and appellate inadequacy, however, swallows the general rule and subjects to mandamus review virtually every quashed subpoena and protective order issued by a trial court in this state. It will be a rare petitioner who cannot claim that being forced to wait and raise the denial of discovery on appeal would subject him to at least a conceivable loss of information. Indeed, why stop with

---

**7.** In *Motorists Mut. Ins. Co. v. Coleman, supra,* we distinguished *Volvo* on the ground that the documents sought to be discovered were in the trial court's possession and so were not likely to be lost during the course of an appeal.

discovery rulings? Many a party aggrieved by an interlocutory ruling will be able to point to some conceivable loss of information or of evidence if denied CR 81 review and made to await appeal. That general risk of conceivable information loss, like "inconvenience, expense, annoyance and other undesirable aspects of litigation," *Fritsch v. Caudill,* 146 S.W.3d 926, 930 (Ky.2004) is simply one of the ordinary costs of litigation, and we have held time and time again that such costs do not make an appeal an inadequate remedy. *See, e.g., Independent Order of Foresters v. Chauvin,* 175 S.W.3d 610, 615 (Ky.2005) ("[T]he costs of litigation ... simply is not enough to show inadequate remedy by appeal."); *Ison v. Bradley,* 333 S.W.2d 784, 786 (Ky.1960) (denying writ that would prohibit trial court from quashing subpoenas for depositions as a "premature appeal ... seeking a precipitate decision" from the court and noting "[i]t takes a minimum of imagination to envision the utter confusion and chaos in the trial of cases if this Court should entertain original proceedings in cases of this character."). The presumption of exigent information loss implicit in *Volvo* and express in *Rehm* is also inconsistent with the Court's observation in *Hoskins* that the adequacy of an appeal "is an issue necessarily determined on a case-by-case basis." 150 S.W.3d at 19. Again, any party in any case can make a generic assertion that information may be lost if the party has to wait for the ordinary process of an appeal.

*Volvo* and *Rehm* are thus outliers, but they can be harmonized with the rest of our mandamus case law if limited to their facts. In *Volvo,* a products-liability plaintiff sought corporate records identifying other people injured by the sudden acceleration of their vehicle so that those individuals could be voluntarily interviewed. When the trial court allowed discovery of the records but prohibited contact with the other injured individuals, this Court issued a writ. In *Rehm,* a plaintiff injured by asbestos exposure brought both product liability and premises liability claims against numerous defendants. One defendant had both product and premises liability claims asserted against it, but all of the other defendants were only sued on one theory, either product or premises liability. The trial court granted summary judgment in favor of the defendants subject to the premises liability claims, and then, concerned about the apportionment issues in any eventual trial against the product liability defendants, stayed all discovery until the appeal on the premises liability claims was concluded. By writ, this Court ordered the "extensive" stay lifted so that discovery could proceed.[8] Inverultra has no such facts. It has not been denied all discovery nor has it identified any specific risk of information loss outside the ordinary, and its appeal remedy is wholly adequate.[9]

---

**8.** Also noteworthy is the fact that *Volvo* and *Rehm* both involved discovery against alleged "wrongdoers" (manufacturers and premises' owners) whose conduct was the alleged direct cause of the plaintiffs' injuries. As repeatedly noted, Union and Confecciones are strangers to the commercial transaction that led to Inverultra's judgment against ZIP Bufalo.

**9.** Purporting to characterize the trial court's order as an "indefinite stay" of discovery pending proceedings in Honduras, Inverultra also cites *Rehm* for the proposition that appeal does not provide an adequate remedy for such stays. Even aside from our retreat from *Rehm's* presumption of inadequacy, this contention lacks merit because it mischaracterizes the trial court's order. The trial court issued a protective order, not a stay, and it did not postpone discovery or send Inverultra to Honduras; it simply deemed some of the proposed discovery, not all of it, inappropriate. Whether that ruling amounts to an abuse of discretion could and should be addressed on appeal.

■ Even if Inverultra's appeal remedy were inadequate, Inverultra must also show that the denial of its CR 81 petition would result either in "great injustice and irreparable injury" to it, *Hoskins*, 150 S.W.3d at 19 (citation, internal quotation marks, and emphasis omitted), or, in "a miscarriage of justice and ... [a] disrupt[ion of] the orderly administration of justice." 150 S.W.3d at 20. We have characterized "great injustice and irreparable injury" as "incalculable damage to the applicant ... either to the liberty of his person, or to his property rights, or other far-reaching and conjectural consequences," *Hoskins*, 150 S.W.3d at 19 (citation and internal quotation marks omitted). The injury must be "something of a ruinous nature." *Robertson v. Burdette*, 397 S.W.3d 886, 891 (Ky.2013). We have expressly rejected the idea that great and irreparable injury results "from the petitioner's temporary loss of a judgment to which he believe[s] himself entitled in the event of a correct ruling." *Hoskins*, 150 S.W.3d at 19.[10]

Inverultra has not indicated, beyond speculation, how it is threatened with incalculable or ruinous injury, and plainly there is no such threat. Inverultra seeks to execute on a judgment against ZIP Bufalo, a debtor which obviously owns property in Honduras sufficient to merit a $44,000 monthly lease payment. Apparently, it has been Inverultra's choice not to pursue execution efforts against that property or other ZIP Bufalo assets, and to the extent that that choice stems from Honduras's unwillingness to recognize the New York judgment, that is purely a fact of Inverultra's own making because it chose where to sue ZIP Bufalo. In assessing "great injustice and irreparable injury" for purposes of an extraordinary writ, it is perfectly appropriate to factor in that Inverultra has chosen, for whatever reason, to pursue recovery against a parent corporation and its subsidiary who are complete strangers to the Inverultra/ZIP Bufalo dispute and resulting judgment. When there are other avenues of potential recovery by a judgment creditor directly against the judgment debtor that have apparently never been used, how can temporary, even if ultimately erroneous, limitations on discovery from a third-party/parties possibly equate with great injustice and irreparable or ruinous injury? In this case, at least, it does not.[11] This prerequisite to the issuance of a writ, therefore, absent administration-of-justice concerns discussed below, is totally missing.

■ For the most part, we have reserved the administration-of-justice "special cases" exception for questions, often

10. Inverultra's claim that its recovery is being dissipated is meritless, since the KRS 426.381(2) attachment provision allows for protection against such dissipation.

11. Inverultra attempts to clothe its claim in constitutional garb by complaining that the trial court in effect has told Inverultra that it must pursue its remedy in another court (in another country) and thus has failed to give Inverultra's New York judgment full faith and credit. This complaint grossly exaggerates the trial court's ruling. The trial court has not done anything to interfere with Inverultra's pursuit of its theory that Union is directly obligated to ZIP Bufalo, and, in particular, the protective order does not shield Union from having to respond in discovery with regard to its own direct relationship, if there is (or was) one, with that company. The trial court has merely deemed irrelevant, and hence improper, the requested discovery concerning Union's relationships with its subsidiaries, including Confecciones. The trial court thus has not slighted Inverultra's New York judgment or denied Inverultra access to Kentucky's courts. The soundness of the trial court's discovery ruling can be fully vetted, if Inverultra so chooses, by means of an appeal.

first-impression questions, bearing importantly on the public administration of the law or on a party's fundamental rights. *Hodge v. Coleman,* 244 S.W.3d 102 (Ky. 2008) (addressing indigent defendants' right to public funds for investigating post-conviction claims); *Bender v. Eaton,* 343 S.W.2d at 802 (addressing first-impression question about the then "relatively new" CR 37.02). This avenue to mandamus review, however, is meant to be a "rare exception[ ] . . . reserved for exceptional cases [where] the remedy may be invoked as a shield from injustice . . . to preserve the orderly administration of the laws." *Cox v. Braden,* 266 S.W.3d at 797 (citations and internal quotation marks omitted). The trial court's ruling here is a garden variety CR 26.03 protective order disallowing what the trial court believes is irrelevant discovery. This is not a special case and it certainly does not merit extraordinary relief.

### *CONCLUSION*

In sum, Inverultra has met none of the conditions requisite for CR 81 relief. The alleged trial court error is subject to adequate appellate review, and even if it were not, the harm Inverultra seeks to avoid is not an irreparable injury to itself nor is there any miscarriage of justice and interference with the orderly administration of our laws. Because Inverultra is thus not eligible for a writ of mandamus or prohibition, we need not, and indeed, as noted above, ought not, address its contention that the trial court is proceeding erroneously. The Court of Appeals need not have done so either, and we expressly vacate that portion of its opinion in which it did. We agree, however, with the Court of Appeals' bottom-line denial of relief, and to that extent, accordingly, we hereby affirm that Court's Order.

All sitting. Minton, C.J.; Keller, and Noble, JJ., concur. Venters, J., dissents by separate opinion in which Cunningham and Scott, JJ., joins.

### VENTERS, J., DISSENTS:

I respectfully disagree with the Majority's analysis of this case, and so I dissent. As the Majority plainly notes, in an action brought under KRS 426.381, "The judgment creditor must allege and prove the existence of such property in the hands of the debtor or a third party, and discovery is available, *as in any other suit,* to aid the creditor in establishing its claim." (emphasis added). What the majority ignores is that, "as in any other suit," here also, the plaintiff bearing the burden of proof (Inverultra) has a right to directly examine witnesses, under oath, who may have information relevant to the inquiry at hand. Here, that inquiry is whether Union—a "third party" of the type expressly referenced in KRS 426.381—has possession of property, including debts and intangibles, belonging to or owing to, the judgment debtor. To date, Inverultra has been wrongfully denied the right to make that inquiry. The Majority cloaks its mischief with the myth that, despite the trial court's refusal to permit discovery, the action will proceed on some basis toward a final judgment from which appellate relief may be sought. The fact is, however, that notwithstanding its *nulla bona* suit ancestry, an action for discovery of assets under KRS 426.381 is over if the trial court refuses to permit the creditor to discover assets. That is, after all, the only reason for bringing such an action. If the creditor is not permitted to ask questions aimed at locating assets of the debtor, nothing further happens. No further proceedings occur. There is no other "final" judgment from which to launch an appeal — the order blocking discovery is, in effect, the

end of the case; it is the final order.[12]

In a routine civil suit of any kind, when monetary damages are adjudged, the judgment creditor's first step after issuing execution without success is, typically, to seek discovery under KRS 426.381, by sending discovery requests to third parties believed to be sufficiently connected to the debtor to have knowledge of possible assets. The Majority opinion vests trial courts with the discretion to deny those requests with no available recourse. That is not consistent with the remedies afforded to judgment creditors by KRS 426.381, and so I accordingly dissent.

Cunningham and Scott, JJ., joins.

---

**12.** Tellingly, the Majority fails to identify any further activity expected to occur in circuit court upon our denial of the writ sought in this case.